## In re TMI LITIGATION GOVERNMENTAL ENTITIES CLAIMS.

### Civ. A. Nos. 81–0419, 81–0437.

United States District Court,
M. D. Pennsylvania.

Aug. 17, 1982.

Arnold Levin, Adler, Barish, Levin & Creskoff, Philadelphia, Pa., Louis Rovelli, Kathleen McGrath, Deputy Attys. Gen., Harrisburg, Pa., for plaintiff.

John G. Harkins, Jr., Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendant.

## MEMORANDUM

RAMBO, District Judge.

The accident at Three Mile Island Reactor No. 2 (TMI) near Harrisburg, Pennsylvania on March 28, 1979 has spawned numerous lawsuits most of which are pending in this court. Ripe for consideration is a motion for summary judgment filed by the defendants, owners of TMI, companies involved with its design and construction and a company which maintained the reactor. The captioned cases were consolidated for pre-trial disposition under the heading "Governmental Entities Claims." Summary judgment will be granted as to all aspects of the cases for the reasons set forth in the following discussion.

The actions seek to recover, on behalf of the Commonwealth of Pennsylvania, two named municipalities, and a class of all other Pennsylvania local municipalities within a radius of 100 miles from Three Mile Island these designated damages:

1. Overtime and compensatory time and other personnel costs incurred in responding to the nuclear incident;

2. Operational expenses and emergency purchases incurred in responding to the nuclear incident;

3. Lost work time as a result of the nuclear incident; and

4. Other expenses incurred as a result of and/or in response to the nuclear incident.

The municipalities also claim they are entitled to recompense for a reduction of real estate tax revenues due to population losses and a diminution of real estate values. Further they ask the court to declare TMI a nuisance and order that it be abated.

*Real Estate Tax Revenues*

■ Defendants submitted the affidavits of William J. Collins, Director of Tax Assessment for Dauphin County (location of the named township plaintiffs). They reveal that both municipalities experienced an increase in real estate tax revenues in the year following the nuclear incident. The municipal plaintiffs have not countered this information with appropriate evidence to sustain the allegations in their complaint. Federal Rule of Civil Procedure 56(e) provides in relevant part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Plaintiffs' counsel admitted at oral argument that he has no reason to question the truth of the Collins affidavit. Defendants are entitled to summary judgment on the municipalities' claim for diminished real estate tax revenues.

*Abatement of Nuisance*

■ The township plaintiffs allege that the TMI facility constitutes a public nuisance warranting injunctive relief. Plaintiffs' claim, if there is one, must arise under federal law, for federal law preempts state law when the matter concerns, as it does here, the radiological hazards of a nuclear facility. *See* 42 U.S.C. § 2021(k); *Northern States Power Co. v. State of Minnesota*, 447 F.2d 1143 (8th Cir. 1971), *aff'd mem.*, 405 U.S. 1035, 92 S.Ct. 1307, 31 L.Ed.2d 576 (1972).

■ Congress has entrusted the Nuclear Regulatory Commission with the responsibility, *inter alia*, of "govern[ing] any activity authorized pursuant to this chapter, including standards and restrictions governing the design, location, and operation of facilities used in the conduct of such activity...." 42 U.S.C. § 2201(i)(3). Congress has further provided that enforcement of the Atomic Energy Act is vested exclusively in the Nuclear Regulatory Commission and in the United States Attorney General. *See* 42 U.S.C. §§ 2271–2282. These provisions preclude private enforcement of the Act. *Susquehanna Valley Alliance v. Three Mile Island*, 619 F.2d at 231, 237–239 (3d Cir. 1980). Accordingly, this claim must be dismissed for failure to state a claim upon which relief can be granted.

*Public Expenditures in Performance of Governmental Functions*

■ Defendants contend that, as a matter of law, public expenditures made in the performance of governmental functions are not recoverable in tort. The rule of the cases brought to the court's attention is that a governmental unit cannot recover firefighting costs, when a fire results from negligence, absent statutory authority to maintain suit for the expenses. *People v. Wilson*, 240 Cal.App.2d 574, 49 Cal.Rptr. 792 (1966); *Town of Howard v. Soo Line RR Co.*, 63 Wis.2d 500, 217 N.W.2d 329 (1974). Recovery by the government is allowed if the property being protected is that of the government itself. *United States v. Chesapeake & Ohio Railway Co.*, 130 F.2d 308 (4th Cir. 1942). Counsel for the municipalities alluded to the possibility that, if there had been a need to evacuate the public there would have been some need to protect township buildings from looting. However, the complaints do not claim expenses for the protection of governmental property.

Plaintiffs argue that a nuclear power accident is a unique emergency which calls for different rules than those which have developed to deal with an everyday occurrence such as a fire. They presented no case law to sustain a governmental right of recovery. However, they claim that Congress' intent in enacting the Price-Anderson Act[1] was to protect the public. They reason from this premise that:

> It is the public policy of the United States, reflected in the Price-Anderson Act, that the risk of offsite damages resulting from nuclear accidents be borne by the licensees of the nation's private operating nuclear power plants through collective contribution, by the private insurance industry and by the United States. Commonwealth's Brief, p. 9.

Ergo governmental entities should be able to recover expenses which would ordinarily not be compensable under Pennsylvania tort law.

Congress determined that the development of nuclear power should be fostered, and enacted legislation to further that goal. A careful reading of the legislative history of the 1966 amendments to the Price-Anderson Act reveals that the lawmakers were very concerned that individuals be compensated for personal injuries, property damage and latent physical injuries which might result from the use of nuclear power. Nowhere in the committee comments on the bill does there appear any expression of concern for the expenses that a government might have to bear if there were a nuclear incident. What is implicit in the design of the law, and is reiterated in the Senate committee comments, is the intention of Congress not to interfere with the substan-

1. Act of September 2, 1957, Pub.L.No. 85–256, 71 Stat. 576, as amended, 42 U.S.C. § 2210.

tive law of the states. The following passage is typical of several found in the comments:

> Since its enactment by Congress in 1957 one of the cardinal attributes of the Price-Anderson Act has been its minimal interference with State law. Under the Price-Anderson system, the claimant's right to recover from the fund established by the act is left to the tort law of the various States....

1966 U.S.Code and Adm.News, pp. 3201, 3206.

Pennsylvania has passed the Emergency Management Services Code which designates the roles and responsibilities of the Commonwealth and its political subdivisions in the event of an emergency. 35 Pa.C.S.A. § 7101 et seq. It is applicable to incidents created by mishaps at a nuclear power facility. 35 Pa.C.S.A. § 7102.[2] The Code is fairly comprehensive, for example it provides for compensation for those who might be injured while engaged in emergency management activities. Yet, it makes no provision for recovery of expenses incurred by the Commonwealth or by any political subdivision in responding to a disaster.

The Commonwealth argued that Pennsylvania and its communities should not have to bear the costs of a nuclear accident alone, rather the costs should be spread nationwide by forcing the liability insurers for nuclear power plants to pay for damages attributable to the plants' operation. In effect the Commonwealth is urging the court to create a nuclear power exception to existing tort law. Disasters come from many industrial sources, and create the need for local governments to respond to emergencies. Hydroelectric dams collapse, tank cars carrying dangerous chemicals derail, fires erupt at oil refineries and hazardous waste dumps emit toxic particles. These potential dangers are a concomitant of a highly industrialized society. Wherever disasters occur local government has traditionally borne the costs. It is not for this court to make the judgment that one industry is more obnoxious or dangerous or less utilitarian than another and force that industry to bear a public expense usually spread through the population by taxation. Such a decision can be made by the legislature after a study of the costs and benefits related to the industry and the desirability of making the industry rather than the public pay for emergency services necessitated by an accident within that particular industry.

*Recovery of Economic Losses Absent Injury to Person or Property*

■ All of the causes of action pleaded in the complaints are based on negligence and strict liability. The governmental entities claim damage for their expenditures in the nature of civil defense efforts, and for wages and salaries paid governmental employees. There are no allegations that any of these costs or expenses were incurred in order to protect government property from threatened physical harm, and there are no allegations that any of these costs or expenses were incurred in restoring or repairing government property actually injured in the TMI accident. The losses claimed by these plaintiffs, then, are purely economic losses; they are, in the parlance of the Restatement authors, non-parasitic economic loss. Restatement (Second) of Torts, § 766C, Comment b. Pennsylvania courts have not permitted lawsuits for such losses where plaintiff has suffered no personal injury or property damage. *Muller v. Pennsylvania Gas Co.,* 54 Erie Co. Legal J. 1 (1970) (employee may not recover commissions lost due to a negligently caused fire at his employer's place of business); *Gramby v. Philadelphia Transportation Co.,* 22 Pa.D. &C.2d 366 (C.P.Phila.Co.1960) (manager of a professional boxer injured while a passenger on a bus barred from suit to recover manager's share of the fighter's anticipated purse); *Heyison v. Taylor,* 7 Pa.D.&C.2d 176 (C.P.Allegheny Co.1956) (partners may not sue for damages sustained by partner-

---

**2.** "Disaster" includes "man-made disaster", which is defined, *inter alia,* as "any ... nuclear ... accident ... which threatens or causes substantial damage to property, human suffering, hardship or loss of life." 35 Pa.C.S.A. § 7102.

ship because it was deprived of injured partner's services).

Courts have generally precluded recovery in tort for purely economic loss because the conceivable chain of damages has a long reach. As the court stated in *Stevenson v. East Ohio Gas Co.*, 47 Ohio App. 586, 73 N.E.2d 200 (Ohio 1946):

> If one who by his negligence is legally responsible for an explosion or a conflagration should be required to respond in damages not only to those who have sustained personal injuries or physical property damage but also to every one who has suffered an economic loss, by reason of the explosion or conflagration, we might well be appalled by the results that would follow. In the instant case the door would be opened to claims for damages based on delay by all those who may have had contracts with [plaintiff's employer] either to deliver materials to the company or to receive from the company the products manufactured by it. Cases might well occur where a manufacturer would be obliged to close down his factory because of the inability of his supplier due to a fire loss to make prompt deliveries; the power company with a contract to supply a factory with electricity would be deprived of the profit which it would have made if the operation of the factory had not been interrupted by reason of fire damage; a man who had a contract to paint a building may not be able to proceed with his work; a salesman who would have sold the products of the factory may be deprived of his commission; the neighborhood restaurant which relies on the trade of the factory employees may suffer a substantial loss. The claims of workmen for loss of wages who were employed in such a factory and cannot continue to work there because of a fire, represent only a small fraction of the claims which would arise if recovery is allowed in this class of cases.

73 N.E.2d at 203–204.

It may also be in this case that services usually provided by these governmental units either were not performed or were delayed. If the government can recover for its losses, then why not one who lost money due to delay on the Commonwealth's or municipalities' part.

Defendants' summarized the policy considerations underlying the rule barring recovery in tort for purely economic losses:

> Thus, while different courts have offered various reasons for denying recovery of economic losses except where parasitic to personal injury or property damage, there appear to be two fundamental concerns which prompt this limitation. One very obvious and often expressed concern is that there is a need to limit potential liability. *See, e.g., Ore-Ida Foods, Inc. v. Indian Head Cattle Co., supra* [290 Or. 909], 627 P.2d [469] at 474. A second concern, however, and one which is more often implied than expressed, appears to be a recognition that the tort theories of negligence and strict liability may not have been intended to protect citizens from economic losses unattended by physical injury to persons or property. *See, e.g.,* James, "Limitations on Liability For Economic Loss Caused by Negligence: A Pragmatic Appraisal," 25 *Vand.L.Rev.* 43 (1972). *See also Just's, Inc. v. Arrington Construction Co., supra,* 99 Idaho [462] at 470, 583 P.2d [997] at 1005 ("the common underlying pragmatic consideration is that a contrary rule, which would allow compensation for losses of economic advantage caused by the defendant's negligence, would impose too heavy and unpredictable a burden on the defendant's conduct"); *Stevenson v. East Ohio Gas Co., supra,* 73 N.E.2d at 203–204.

Defendants' Memorandum in Support of Motion for Summary Judgment, pp. 27, 28. Whichever rationale one accepts, the courts have consistently refused to recognize a cause of action in negligence or strict liability for economic injury unattended by physical injury or damage to real or personal property.

At oral argument plaintiffs claimed that the rule barring recovery for non-parasitic economic injuries is not applicable to claims

based on strict liability for harm from an abnormally dangerous activity. The Restatement (Second) of Torts instructs:

§ 519

(1) One who carries on an abnormally dangerous activity is subject to liability for *harm to the person, land or chattels* of another resulting from the activity, although he has exercised the utmost care to prevent the harm.

The statement of the law itself would seem to answer plaintiff's contention. Harm to "person, land or chattels" is a necessary element of the cause of action. Any additional damages, such as economic loss occasioned by employees who failed to show up for work, would have to flow from or be attendant upon the existence of one of the three enumerated harms. It is this symbiotic relationship of damages that has been termed parasitic.