COMMONWEALTH OF PENNSYLVA-
NIA, Appellant in No. 82–3421,

The Township of Susquehanna and The Township of Lower Swatara, individually and on behalf of all other similarly situated, Appellants in No. 82–3425,

v.

GENERAL PUBLIC UTILITIES CORP., Metropolitan Edison Company, Jersey Central Power & Light Co., Pennsylvania Electric Co., Babcock and Wilcox Company, J. Ray McDermott & Company, and Catalytic, Inc.

Nos. 82–3421, 82–3425.

United States Court of Appeals,
Third Circuit.

Argued May 11, 1983.

Decided June 23, 1983.

LeRoy S. Zimmerman, Atty. Gen., Louis J. Rovelli (argued), Deputy Atty. Gen., Harrisburg, Pa., for appellant in No. 82–3421.

Arnold Levin (argued), Howard J. Sedran, Laurence S. Berman, Levin & Fishbein, Philadelphia, Pa., and Lee C. Swartz, Hepford, Swartz, Menaker & Wilt, Harrisburg, Pa., for appellants in No. 82–3425.

John G. Harkins, Jr. (argued), Edward W. Madeira, Jr., Alfred H. Wilcox, Jr., John A. Guernsey, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellees.

Before ADAMS and WEIS, Circuit Judges, and VanARTSDALEN, District Judge.*

## OPINION OF THE COURT

VanARTSDALEN, District Judge.

On March 28, 1979, and for a period of time thereafter, certain events occurred at the Three Mile Island nuclear energy electric generating plant located in Dauphin County, Pennsylvania, approximately fifteen miles downstream on the Susquehanna River from the state capitol in Harrisburg, Pennsylvania. Those events are alleged to have constituted a "nuclear incident."[1]

---

* Honorable Donald W. VanArtsdalen, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1. The events giving rise to the alleged "nuclear incident" at Three Mile Island have been the subject of extensive investigation and exhaustive reports. *See* Staff Studies, Nuclear Accident and Recovery at Three Mile Island, Senate Subcommittee on Nuclear Regulation for the Committee on Environment and Public Works (July 1980); Report to the United States Senate, Nuclear Accident and Recovery at Three

Mile Island, Senate Subcommittee on Nuclear Regulation for the Committee on Environment and Public Works (June 1980); Report of the Governor's Commission on Three Mile Island, William W. Scranton, III, Lt. Governor, Chairman (February 26, 1980); Report of the President's Commission on the Accident at Three Mile Island, John G. Kemeny, Chairman (October 1979); Staff Report to the President's Commission on the Accident at Three Mile Island (Six Volumes) (October 1979); The Pennsylvania National Guard, After Action Report—Three Mile Island Nuclear Incident; The Socio-

The Atomic Energy Act of 1954, 42 U.S.C. § 2011 *et seq.,* as amended by the popularly named Price-Anderson Act, Act of September 2, 1957, Pub.L. 85–256, 71 Stat. 576 (codified in scattered sections of 42 U.S.C.), defines a "nuclear incident" as:

[A]ny occurrence, including an extraordinary nuclear occurrence, within the United States causing, within or outside the United States, bodily injury, sickness, disease or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material . . . .

42 U.S.C. § 2014(q).

Among the many lawsuits spawned by the March 28, 1979 events at Three Mile Island was an action for damages filed by the Commonwealth of Pennsylvania against the owners, operators, designers and builders of the facility. This action was filed in the Middle District of Pennsylvania and docketed as Civil Action 81–419. Another action was filed in the same district against the same defendants by the Township of Susquehanna, a first class township with its municipal offices located in Harrisburg, Dauphin County, Pennsylvania and the township of Lower Swatara, a second class township with its municipal offices located in Middletown, Dauphin County, Pennsylvania. The action by the two townships, docketed as Civil Action 81–437, was filed as a class action in which the township plaintiffs sought to represent a class consisting of all other municipalities and various public entities within a radius of one hundred miles of Three Mile Island. The action sought both monetary damages and equitable relief, including abatement of an alleged nuisance. Both Civil Action 81–419 and Civil Action 81–437 were consolidated in the district court and on this appeal.

Jurisdiction was asserted by plaintiffs under the Atomic Energy Act of 1954, 42 U.S.C. § 2011 *et seq.,* as amended by the

Economic Impacts of the Three Mile Island Accident, Final Report, Governor's Office of

Price-Anderson Act, Act of September 2, 1957, Pub.L. 85–256, 71 Stat. 576 (codified in scattered sections of 42 U.S.C.) and under 28 U.S.C. §§ 1337 & 1441. Pendent jurisdiction was also asserted as to pendent state causes of action.

Prior to the filing of any responsive pleading, the taking of any discovery or the establishing of any additional facts of record, and without filing any affidavit except as to a minor issue concerning one of the claims for damages, the defendants filed motions for summary judgment. After receiving briefs and hearing oral argument, the district court granted summary judgment in favor of all defendants against all plaintiffs, thus terminating the actions. *In re TMI Litigation Governmental Entities Claims,* 544 F.Supp. 853 (M.D.Pa.1982).

■ Paragraph 17 of the township plaintiffs' complaint alleged as follows:

17. The activities of defendants as alleged hereinabove render the Three Mile Island facility a public nuisance and have caused plaintiffs and class members irreparable harm.

Township plaintiffs seek an order directing the defendants to abate the nuisance, and an order granting other appropriate relief in addition to claims for damages. The district court dismissed the claim for abatement of a public nuisance and for injunctive relief for failure to state a claim upon which relief can be granted. We find no error in this portion of the district court's order and such portion is affirmed.

■ Private litigants, including municipalities and political subdivisions may not maintain an action to enforce provisions of the Atomic Energy Act. The statute expressly provides that no action for violation of the Act shall be commenced except by the Attorney General of the United States. 42 U.S.C. § 2271(c); *Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor,* 619 F.2d 231, 237–239 (3d Cir.1980),

Policy and Planning.

*cert. denied,* 449 U.S. 1096, 101 S.Ct. 893, 66 L.Ed.2d 824 (1981).

The township plaintiffs also assert pendent jurisdiction over state causes of action. Plaintiffs therefore argue that, even if they are precluded from enforcing the Atomic Energy Act provisions, they may maintain a common-law equitable action to abate a public nuisance. It is apparent that plaintiffs' public nuisance claim is based on the contention that defendants' activities rendered the Three Mile Island facility unsafe and a continuing danger and threat to public safety.

■ In the field of safety regulation of privately owned nuclear energy plants, the federal government has sole and exclusive jurisdiction. In *Pacific Gas & Electric Co. v. State Energy Resources Conservation and Development Commission,* —— U.S. ——, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983), the Supreme Court stated:

> Congress, in passing the 1954 Act and in subsequently amending it, intended that the federal government should regulate the radio-logical safety aspects involved in the construction and operation of a nuclear plant, but that the States retain their traditional responsibility in the field of regulating electrical utilities for determining questions of need, reliability, cost and other related state concerns.

*Id.* at ——, 103 S.Ct. at 1723. The Court continued:

> [T]he federal government maintains complete control of the safety and "nuclear" aspects of energy generation; the states exercise their traditional authority over the need for additional generating capacity, the type of generating facilities to be

licensed, land use, ratemaking and the like.

*Id.* at ——, 103 S.Ct. at 1726 (footnote omitted). Private litigants therefore may not obtain by way of injunctive relief pursuant to state law an order abating as a public nuisance, because of public safety hazards, activity of a duly licensed nuclear energy electric generating plant.

The remaining claims by the plaintiffs seek monetary damages on a broad spectrum of tort principles. The complaints allege negligence, gross negligence and "willful misconduct"[2] in designing, constructing, operating and maintaining the Three Mile Island facility. Liability is also claimed under doctrines of strict liability in tort. The production of electricity by nuclear energy is claimed by plaintiffs to be "ultrahazardous activity"[3] for which there may be imposed liability for harm caused without fault. Plaintiffs also rely on Section 402(A) Restatement (Second) of Torts as interpreted by the Courts of Pennsylvania.[4]

The main issue on appeal is whether the plaintiffs have alleged any damages that are compensable under existing tort law. The Commonwealth's complaint identified four categories of claimed damages: (1) overtime and compensatory time and other personnel costs incurred in responding to the nuclear incident; (2) operational expenses and emergency purchases incurred in responding to the nuclear incident; (3) lost work time as a result of the nuclear incident; and (4) other expenses incurred as a result of and/or in response to the nuclear incident. The townships' complaint tracked the language of the Commonwealth's complaint as to damages in these four catego-

---

**2.** "Willful misconduct" is nowhere defined in the complaints. Presumably the phrase refers to some type of intentional tortious activity.

**3.** The "ultrahazardous activity" claim appears to be based on Sections 519 and 520 of the RESTATEMENT (SECOND) OF TORTS. Comment "g" to Section 520 states: "[S]ome activities, such as the use of atomic energy, necessarily and inevitably involve major risks of harm to others, no matter how or where they are carried on." We make no determination

whether Three Mile Island's operations constitute ultrahazardous activity.

**4.** We express no opinion as to whether a malfunction of a nuclear energy plant would, under Pennsylvania law, be deemed to come within the doctrine of 402(A); nor do we decide whether the plaintiffs are "ultimate users or consumers" within the doctrine of 402A as interpreted by the courts of the Commonwealth of Pennsylvania.

ries except that the townships' claim as to items 1, 2 and 4 above was limited to the "extraordinary expenditure of funds" for those purposes. In addition, the township plaintiffs claimed that the nuclear incident caused a "reduction of real estate tax revenues due to population losses and a diminution of real estate values."

Defendants filed uncontested affidavits with their motion for summary judgment that establish, contrary to the allegations of the complaint, that tax revenues have increased since March 28, 1979, in both of the plaintiff townships. Plaintiff townships concede the validity of the order dismissing that portion of their claims. The grant of summary judgment as to the claim for damages for reduced municipal tax revenues was not error. That portion of the district court's order is affirmed.

The four remaining categories of damages identified above were set forth in the complaints in very general and somewhat vague terms. One of the major claims appears to be recovery for costs incurred by the governmental units in carrying out their respective governmental functions to protect persons and private property from harm. The district court ruled that "public expenditure made in the performance of governmental functions are not recoverable in tort." Such costs as purchasing emergency supplies, paying for extra police and fire protection, utilizing other civil servants to organize and carry out plans to meet the perceived emergency appear to be similar in kind and nature to those incurred by governmental units whenever a serious public emergency involving the safety of persons and property arises. The type of damages claimed is similar to that produced by other man-made catastrophies such as fires, explosions, collapsing structures and the like.

■ Plaintiffs argue that a "nuclear incident" presents a unique type of hazard and that special rules of law should be adopted to permit recovery by state and local governmental entities. No evidence was presented nor were any facts established of record as to the peculiar characteristics of the nuclear power industry. The district

court determined that the hazards were merely "a concomitant of a highly industrialized society." *In re TMI Litigation Governmental Entities Claim,* 544 F.Supp. at 856. While it is true that knowledgeable persons may understand a great deal concerning nuclear power plants and the nature of the dangers associated with their operation, there might be specific information about the nature of the risks posed by such plants or the governmental problems involved in responding to nuclear incidents that plaintiffs could present to show that the nuclear industry differs from other industries in material respects and thus that the Pennsylvania courts would treat it differently. Because this issue is at the heart of plaintiffs' case, they should have been given the opportunity to present such evidence before summary judgment was granted. Accordingly, this portion of the district court's ruling will be vacated and the matter remanded to permit the development of a more complete factual record.

The township plaintiffs contend that, even if injunctive relief is not available, damages for maintaining a public nuisance may still be recovered under "a wide body of federal common law [that] has recently developed in the public nuisance area." They argue that this Court should adopt as a principle of federal common law that state and municipal governmental entities are entitled to recover damages for extraordinary expenses incurred in protecting the public from the hazards created by a nuclear incident caused by private tortious conduct.

■ The legislative history of the Price-Anderson Act supports the position that state tort law should decide the issues of liability and recoverable damages for nuclear incidents. In the committee comments of the Joint Committee on Atomic Energy, favorably reporting Senate Report No. 1605, it was noted that:

> Since its enactment by Congress in 1957 one of the cardinal attributes of the Price-Anderson Act has been its minimal interference with State law. Under the Price-Anderson system, the claimant's

right to recover from the fund established by the act is left to the tort law of the various States; ....

S.Rep. No. 1605, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Ad.News 3201, 3206. The committee further commented:

This approach to the problems discussed above is in keeping with the approach followed in enacting the original Price-Anderson Act—namely, interfering with State law to the minimum extent necessary. In essence, the plan adopted permits the retention of State law with respect to the cause of action and the measure of damages....

S.Rep.No. 1605, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Ad.News 3201, 3209. The 1975 extension and amendment of the Price-Anderson Act again provided the Senate's view, as set forth in Senate Report No. 94–454: "The above provisions are in no way intended to create any causes of action not in accordance with existing law or to derogate any existing cause of action." S.Rep. No. 454, 94th Cong., 1st Sess. 16, *reprinted in* 1975 U.S. Code Cong. & Ad.News 2251, 2265. In short, there is nothing in the statute, the legislative history or any cited case law called to our attention that convinces us that federal courts should adopt and apply some form of federal common law as yet undeveloped in determining civil liability arising from a nuclear incident.

Both the Commonwealth and the township plaintiffs seek damages for "lost work time as a result of the nuclear incident." So far as can be gleaned from the record, briefs and oral arguments, plaintiffs contend that as a result of the nuclear incident many of plaintiffs' employees, upon obtaining some information about the incident, remained away from work for a period of time but were nonetheless paid their normal wages. Other employees who continued to report to work worked overtime to replace those employees who failed to report to work, thus requiring plaintiffs to make additional wage payments for overtime. The record does not establish whether any, some or all of the public servants who failed to report for work did so because of some advice, directive or order issued by the Governor or some other public official pursuant to official duties, or whether such workers failed to report as a matter of personal precaution. What, if any, state or local official action was taken as to workers not reporting for work and whether the wages paid to such workers were required by contract or applicable law or simply made as voluntary payments, does not appear of record. At oral argument counsel were not in agreement as to whether any responsible official, such as the Governor, issued pursuant to law any proclamation, declaration or order concerning a general or local state of public emergency.[5] Before it can be decided whether plaintiffs may be able to recover such "lost work" time, the record should be amplified and clarified as to the facts concerning such claimed damages. Plaintiffs should be afforded an opportunity to define more precisely the factual predicate for this claim of damages.

The complaints do not contain any claim of damages for direct physical damage to any of plaintiffs' property, such as physical damage to public buildings, parks, vehicles and equipment. The district court concluded therefore that the losses claimed were "all purely economic losses." Both in the briefs and oral arguments, however, there was the contention by plaintiffs that increased radioactivity and radioactive materials emitted during the nuclear incident permeated the entire area, and this rendered the public buildings unsafe for a temporary period of time, and constituted a physical intrusion upon the plaintiffs' properties. This intrusion, plaintiffs argue, is a sufficient showing of physical harm or injury to permit plaintiffs to recover for damages flowing from such harm, including

5. In *Metropolitan Edison Co. v. People Against Nuclear Energy*, —— U.S. ——, ——, 103 S.Ct. 1556, 1558, 75 L.Ed.2d 534 (1983), the Supreme Court noted: "The Governor of Pennsylvania recommended an evacuation of all pregnant women and small children, and many area residents did leave their homes for several days."

damages for the wages paid to workers who remained away from work but were nevertheless paid. Plaintiffs also contend that the intrusion of radioactive materials made their buildings and properties at least temporarily less usable for which they are entitled to recover damages measured by the decreased staff of workers reporting for duty. Although we express no opinion as to whether such a theory of damages may ultimately prevail, plaintiffs should be permitted to develop the facts upon which these contentions may be tested.

Both complaints allege that the events at Three Mile Island constituted a "nuclear incident." By statutory definition, to be a nuclear incident the occurrence must cause "bodily injury, sickness, disease or death, or loss of or damage to property, or loss of use of property." Although plaintiffs apparently do not assert that any "bodily injury, sickness, disease or death" was caused, they clearly claim temporary loss of use of property and "damage to property" as a result of the intrusion of radioactive materials upon plaintiffs' properties through the ambient air, irrespective of any causally-related permanent physical harm to property.[6] The complaints are adequate to defeat a motion for summary judgment or a motion to dismiss and to permit such a claim for damages to proceed.

The township plaintiffs have also argued that at least some of the extraordinary expenses incurred were for the protection of plaintiffs' own property, as distinct from the protection of private property of the residents and persons in the vicinity. Although such a claim for damages is not readily apparent from the complaint, the lack of clarity of the complaint should not permanently preclude plaintiffs from seeking to prove such a claim.

There is disagreement among the parties as to whether, during oral argument before the district court, any discussion of amendment of the complaints or offer or opportunity to amend took place. The submissions of counsel subsequent to oral argument made at this Court's request establish only that the argument before the district court was not recorded and that the parties continue to have slightly different recollections of what transpired. Those differences have no bearing on this decision. Should the parties or the district court conclude that amended complaints should be filed to further define and clarify the claims being made, this will be a matter for the district court's decision in the first instance.

The only facts on record at the time summary judgment was entered relevant to the issues on appeal were those pleaded in the complaints. The district court concluded that under the law the plaintiffs failed to set forth any valid claim for damages. This case presents important and at least factually unique issues involving the potential liability of designers, builders, owners and operators of privately-owned nuclear energy electric generating plants to pay damages to state and local governmental units and agencies in the event of a statutorily defined "nuclear incident." To pass upon these issues requires a record more complete than that before us and the district court.

In sum, we conclude that the district court properly granted summary judgment as to any claims for damages for reduction of real estate tax revenues and that the district court properly dismissed, for failure to state a claim, any claims based upon state common law or federal common law nuisance theories. To the extent that the district court dismissed plaintiffs' other damage claims, the decision of the district court will be vacated and remanded. Our decision will not preclude the district court from considering any renewed motion for summary judgment or other appropriate

---

6. In *Metropolitan Edison Co. v. People Against Nuclear Energy*, —— U.S. ——, ——, 103 S.Ct. 1556, 1558, 75 L.Ed.2d 534 (1983), the Supreme Court, referring to the events of March 28, 1979, at Three Mile Island, stated: "[A]s it turned out, no dangerous radiation was re-

leased." Plaintiffs, in the present cases, have alleged that "radioactive debris was dispersed throughout the area" (Civil Action 81–437, Plaintiffs' Complaint ¶ 12), and that "there were releases of radioactive materials" (Civil Action 81–419, Plaintiff's Complaint ¶ 10).

**124**

disposition of the claims short of a trial, upon establishing of record the material facts.

The grant of summary judgment by the district court is vacated and the case remanded to the district court for further proceedings consistent with this decision.