BOARD OF COMMISSIONERS, COUNTY OF CUYAHOGA, City of Strongsville, City of Berea, Plaintiffs,

v.

NUCLEAR ASSURANCE CORP. Transnuclear, Inc., Wisconsin Electric Power Company, Commonwealth Edison Company, Federal Radiological Preparedness Coordinating Committee, Federal Emergency Management Agency, U.S. Department of Transportation, U.S. Nuclear Regulatory Commission, U.S. Environmental Protection Agency, U.S. Department of Health and Human Services, U.S. Department of Energy, U.S. Department of Defense, U.S. Department of Agriculture, U.S. Department of Commerce, Ohio Turnpike Commission, State of Ohio, Raymond Galloway, Director of the Ohio Disaster Services Agency, James R. Williams, Chief of Staff of the Ohio Disaster Services Agency, Defendants.

No. C83–3877.

United States District Court,
N.D. Ohio, E.D.

May 24, 1984.

John D. Ryan, Ryan, Gygli & O'Brien, Thomas Gill, Asst. County Prosecutor, County of Cuyahoga, Cleveland, Ohio, James N. Walters, Berea, Ohio, Phillip J. Campanella, Mark I. Wallach, Calfee, Halter & Griswold, Cleveland, Ohio, Frank Groh-Wargo, Berea, Ohio, for plaintiffs.

James M. Freidman, Michael L. Hardy, Michael S. McMahon, Jeffery A. Key, Guren, Merritt, Feibel, Sogg & Cohen, Cleveland, Ohio, Jack McKay, Shaw, Pittman, Potts & Towbridge, Washington, D.C., for Nuclear Assurance Corp., Transnuclear, Inc., Wisconsin Elec. Power Co., and Commonwealth Edison Co.

Patrick M. McLaughlin, Dennis P. Zapka, Asst. U.S. Attys., Cleveland, Ohio, for Federal Radiological Preparedness Coordinating Committee, Federal Emergency Management Agency, U.S. Dept. of Transp., U.S. Nuclear Regulatory Com'n, U.S. Environmental Protection Agency, U.S. Dept. of Health and Human Services, U.S. Dept. of Energy, U.S. Dept. of Defense, U.S. Dept. of Agriculture and U.S. Dept. of Commerce.

James C. McGrath, Philip A. Loftus, Berea, Ohio, for Ohio Turnpike Com'n.

E. Dennis Muchnicki, Karen A. Kolmacic, Asst. Attys. Gen., Columbus, Ohio, for State of Ohio, Raymond Galloway, Director of the Ohio Disaster Services Agency, and James R. Williams, Chief of Staff of the Ohio Disaster Services Agency.

## MEMORANDUM OF OPINION AND ORDER

KRENZLER, District Judge.

Plaintiffs commenced this action on September 28, 1983. An amended complaint

was filed on October 20, 1983. Plaintiffs seek declaratory and injunctive relief to prohibit the utility defendants' shipments of spent nuclear fuel through Cuyahoga County, including the Cities of Strongsville and Berea, until such time as the federal and state defendants assist plaintiffs in training and equipping their safety forces for a response to a transportation accident involving radioactive materials. Plaintiffs also attack as void an agreement between the State of Ohio and defendant Wisconsin Electrical which set the transportation route and safety measures for the movement of Wisconsin Electrical's nuclear waste materials through Ohio.

Plaintiffs attempt to invoke the jurisdiction of this Court based upon the "federal question" statute, 28 U.S.C. § 1331(a), the mandamus statute, 28 U.S.C. § 1361, the declaratory judgment statutes, 28 U.S.C. §§ 2201 and 2202, and the administrative procedure statutes, 5 U.S.C. §§ 701–706.

Pending before the Court are: (1) a motion for summary judgment or to dismiss filed by the State of Ohio and the Ohio Turnpike Commission on October 21, 1983; (2) a motion to dismiss filed by the Ohio Turnpike Commission on October 21, 1983; (3) a motion to dismiss filed by defendants Wisconsin Electrical Power Co., Commonwealth Edison Co., Transnuclear, Inc., and Nuclear Assurance Corp. (utility defendants) filed on October 21, 1983; (4) a motion to dismiss or in the alternative for summary judgment filed by the federal defendants on October 21, 1983; and (5) a motion to dismiss and/or motion for summary judgment filed by defendants State of Ohio, Raymond Galloway, and James R. Williams on December 23, 1983.

The undisputed facts in this case are as follows. On June 29, 1983, the District Court for the Western District of New York ordered Wisconsin Electrical Power Co. (WEPCO) and Commonwealth Edison Company to remove "with reasonable dispatch" spent nuclear fuel stored at West Valley, New York. In response to this Order, WEPCO and Commonwealth Edison Company contracted with defendants Tran-snuclear, Inc. and Nuclear Assurance Corp. for the shipment of the spent nuclear fuel from West Valley by motor vehicles to locations in Illinois and Wisconsin. Some of the spent nuclear materials will pass through the State of Ohio en route to their destination.

The State of Ohio became involved in the question of shipment of the nuclear waste materials when it sought to intervene in the New York case in order to stop shipments or upgrade the terms under which the shipments through Ohio would be made. Shortly thereafter, negotiations between WEPCO and the State of Ohio resulted in an agreement as to the route of the shipments in Ohio as well as safety measures to be taken as the shipments pass through Ohio.

The designated route requires the shipments to enter Ohio from Pennsylvania on I–80, to proceed to the Ohio Turnpike, and to remain on the Ohio Turnpike to the Ohio-Indiana border. Two Ohio Highway Patrol cars, equipped with radioactive monitoring devices will accompany each shipment. The trucks making the shipments shall be under the control of the Highway Patrol officers escorting the shipments. The State of Ohio may halt individual shipments due to specific highway safety considerations including weather conditions and road repair. Shipments are limited to times of lesser traffic congestion.

The threshold issue before the Court in this matter is whether plaintiffs have standing to bring this action. If not, this Court lacks subject matter jurisdiction to entertain plaintiffs' claims.

The Court recognizes that any matter involving nuclear materials raises serious apprehensions and concerns for public safety. Such concerns are valid and warrant serious attention. However, the rules of standing which this Court must apply in determining whether it has subject matter jurisdiction do not change merely because the materials being shipped in this action are radioactive. Hence, the Court will address the issue of standing using criteria

set forth by the United States Supreme Court.

The doctrine of "standing" has its basis in Article III of the United States Constitution which directs the federal judiciary to hear "cases and controversies." To satisfy the Article III standing requirement, plaintiff must allege a "personal stake in the outcome as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

■ Because Article III judicial power exists only to redress or otherwise protect a complaining party against injury, the Supreme Court has specifically delineated the three minimal and crucial elements of standing as follows. Plaintiff must show that (1) he personally suffered some actual or threatened injury; (2) that said injury can fairly be traced to the challenged acts of the defendant; and (3) that the injury is likely to be redressed by a decision favorable to plaintiff. *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982).

Plaintiffs identify two basic injuries to them in this action. First, plaintiffs contend that their safety forces are unprepared to respond to a nuclear transportation accident. Such unpreparedness, plaintiffs assert, is causing the officials and citizens of plaintiff local governments to suffer anxiety and fear because an accident involving radioactive leakage could cause extensive damage to the health and property within the boundaries of plaintiff local governments. Second, plaintiffs allege that they are suffering economic loss from their own funding of training and equipping their safety forces for a response to a possible transportation accident involving radioactive materials. Defendants, relying upon the pleadings, affidavits, exhibits, and deposition testimony, contend that plaintiffs' alleged injuries fail to meet the minimal Article III requirements for standing because: (1) the injuries are not real and immediate; (2) the injuries cannot be causally linked to an action or inaction on the part of the defendants; and (3) the relief sought by plaintiffs would not redress the harm alleged by plaintiffs.

Based upon the pleadings, exhibits, deposition testimony, and affidavits presented in this matter, the Court finds that plaintiffs have failed to demonstrate the minimal Article III standing requirements needed to invoke the jurisdiction of this Court.

■ The Court first finds that the contention of lack of preparedness to respond to a nuclear transportation accident and the present fear resulting from that unpreparedness do not constitute an actual or threatened injury sufficient to confer standing on plaintiffs. The Supreme Court recently reiterated the definition of injury for the purposes of determining standing to bring an action as follows:

> Abstract injury is not enough. The plaintiff must show that he "has sustained or is immediately in danger of sustaining some direct injury" as the result of the challenged .... conduct and the injury or threat of injury must be both "real and immediate" not "conjectural or hypothetical."

*City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

The most closely analogous case involving standing and nuclear materials is *Duke Power Company v. Carolina Environmental Study Group*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978), in which the Supreme Court held that there was sufficient "injury in fact" resulting from the immediate adverse effects on the environment surrounding a nuclear plant to satisfy Article III standing requirements. The Court declined to decide if present apprehensions based on the possibility of a nuclear accident constituted a sufficiently concrete injury to satisfy the constitutional standing requirements. It is this Court's opinion that the likelihood of the occurrence of the combination of events neces-

sary before plaintiffs' safety forces would be called to respond to a nuclear transportation accident on the Ohio Turnpike is even more remote than the possibility of an injury from a nuclear accident to the vicinity surrounding a nuclear power plant. Hence, the Court finds the injury of unpreparedness to be too speculative and remote to support standing in this action.

Addressing first the unpreparedness of plaintiff Cuyahoga County to respond to a nuclear transportation accident, the evidence indicates that the County has no emergency response equipment of its own, has no on-site responsibilities during an emergency, and has no duty, contractual or otherwise, to provide emergency services on the Ohio Turnpike. The Highway Patrol may, at its discretion, notify the County Disaster Services Agency (DSA). The County's role in a radiological emergency response, if notified by the Highway Patrol, is to notify and coordinate with the State DSA what type of assistance may be required from the State DSA and to alert municipalities in the vicinity of the incident. Hence, the County suffers no injury from lack of emergency response capability because it has no safety force responsibilities in the event of a nuclear transportation accident.

As to the Cities of Strongsville and Berea, the evidence indicates the following. Each shipment of nuclear waste will be containerized and packaged in air-tight 50,-000 pound casks which must meet the federal safety requirements set out in 10 C.F.R. 71, Appendices A and B. Each cask is loaded on a flatbed trailer and is covered by an expanded metal protection screen which keeps persons at least three feet from the surface of the cask.

Pursuant to the State of Ohio-WEPCO agreement, the shipments will be traveling only along the Ohio Turnpike while traversing Cuyahoga County. The Highway Patrol cars accompanying the shipments will be equipped with radiation monitoring equipment. If traveling at a speed of 50 miles per hour, the shipments would be on the two-mile stretch of the Turnpike within

the Berea city limits for approximately 70–75 seconds. Traveling at the same speed, the vehicles would be within the Strongsville city limits for approximately five minutes.

Because the shipments are traveling only on the Ohio Turnpike, the safety forces of Berea and Strongsville have no affirmative duty, contractual or otherwise, to respond to accidents on the Turnpike. Furthermore, safety officials from both Berea and Strongsville indicate that the Highway Patrol has rarely contacted the cities to respond to accidents on the Ohio Turnpike.

The State of Ohio, through the Ohio Disaster Services Agency (DSA) presently provides 24-hour nuclear emergency response capability for Ohio. The Ohio DSA is prepared to provide services geared to the peculiar requirements of a radiological emergency, including first response evaluation of hazards, immediate action to protect the public from exposure, and formulating a basis for further actions. If contacted, the Ohio DSA needs one and one-half to two and one-half hours to reach the Cuyahoga County area to evaluate a situation involving radioactive materials.

The safety forces of Berea or Strongsville would be called to respond to a nuclear transportation accident in a manner for which they might be unprepared only if the following combination of events occurred. First, a truck carrying a shipment must be involved in a transportation accident within the short span of Turnpike within the boundaries of the two cities.

Second, the safety forces must be called to respond to the accident because the Highway Patrol, within its discretion, requested their presence.

Next, the accident must involve a breach of the cask containing the spent fuel so that there is a radioactive leakage. Finally, either before or after the arrival of the Ohio DSA, the safety forces must be called upon to perform tasks other than those for which they are already trained, i.e., fighting a fire in which escaped nuclear materials are involved, rather than those tasks which would be required of them in any

emergency, i.e., restriction of the area, directing traffic, or fighting an ordinary fire.

The likelihood of all these events occurring is so hypothetical and remote that plaintiffs' perceived injury of unpreparedness for such a possibility is an insufficient "injury in fact" to confer standing on plaintiffs in this action. Plaintiffs therefore have failed to satisfy the first criterion of standing.

■ Second, plaintiffs have failed to demonstrate that their perceived injury relating to a lack of emergency response capability bears a causal connection to the challenged conduct of the defendants. The evidence in this action indicates that the inaction of plaintiffs prior to the filing of this lawsuit has caused any unpreparedness suffered by them.

The Court will focus on the actions of the federal and state agencies in addressing the causation issue because plaintiffs allege that their unpreparedness is causally linked to the failure of these agencies to carry out their legal duties with respect to planning, training, and equipment.

Both the federal and state agencies responsible for coordinating the activities relating to radioactive accidents offer training events specifically dealing with radiological materials.

Specifically, under 44 C.F.R. § 351.20, the Federal Emergency Management Agency (FEMA) has the function of coordinating federal assistance and guidance to state and local governments for developing, reviewing, assessing, and testing the state and local radiological emergency plans. On April 31, 1983, the FEMA published an interim pamphlet, FEMA–REP–5, "Guidance for Developing State and Local Radiological Emergency Response Plans and Preparedness for Transportation Accidents." Copies of the pamphlet were distributed in Ohio, including one to the Administrative Assistant to the Cuyahoga County Commissioners. The availability of the pamphlet was noticed in the Federal Register on May 6 and May 18, 1983.

Furthermore, FEMA supports training and education to state and local officials in the following ways: (1) a partial week's training course in emergency management including nuclear transportation accidents offered at FEMA's Emergency Management Institute and available to federal, state, and local officials upon application on a first come, first served basis; (2) courses conducted jointly by federal and state agencies; and (3) encouragement and financial assistance to the states to sponsor courses for state and local emergency personnel within the state.

Similarly, in Ohio, § 5915.02 of the Ohio Revised Code creates the Ohio Disaster Services Agency (DSA) and gives the agency the responsibility for planning, organizing, and maintaining civil defense, which under Ohio Rev.Code Ann. § 5915.01(C) and (G) includes man-made disasters such as nuclear transportation accidents.

The main function of the Ohio DSA is to coordinate the activities of the federal, state, and local governments in matters relating to civil defense. Pursuant to this mandate, the State of Ohio conducted 239 training activities in Fiscal Year (FY) 1982 which were partially funded by the FEMA. In FY 1983, the State of Ohio offered 50 training activities covering ten different subject areas relating to nuclear accidents, with the financial support of FEMA. Five of the subject areas, Radiological Monitoring, Radiological REP (Radiological Emergency Preparedness) Officer, Air Radiological Monitoring, Radiological REP Instructor Workshop, and Radiological Monitor Refresher, provided training related to or transferable to dealing with transportation accidents involving nuclear material.

Because of time and size limitations for the radiological monitoring course, a local government has the alternative to train a local individual as an instructor to teach the radiological monitoring course at the local level. The program to become such an instructor includes two FEMA sponsored seminars followed by an application for a Cobalt 60 User's Certificate.

Descriptions of the above-mentioned courses are provided in the Emergency Management Institute Catalog of Courses.

Both Berea and Strongsville recognized the unique problems that radiological materials pose prior to the filing of this lawsuit. Berea passed an ordinance concerning the transportation of hazardous materials including radiological materials through its borders in 1979. Likewise, Strongsville enacted an ordinance relating to the transportation of radiological material in 1978. The files of both Berea's and Strongsville's Fire Departments contained information relating to radioactive materials.

Despite this recognition that radiological materials pose unique problems, the Cities failed to prepare themselves to deal with radiological materials prior to filing this lawsuit. Prior to this lawsuit, Berea had not developed a disaster plan to deal with a radiological accident. Furthermore, prior to bringing this action, Berea's Police Chief never made inquiries to the County DSA, the Ohio DSA, or any federal agency concerning the availability of training programs needed to prepare them for a response to a nuclear transportation accident. Likewise, Berea's Fire Chief never contacted the Ohio DSA regarding courses related to radiological material transportation. Although Berea's Fire Chief made one request to a federal agency, the FEMA, for information, the material was never forwarded when the Fire Chief failed to submit the seven dollar cost of the material. Furthermore, the Fire Chief had not requested from either the DSA or any federal agency equipment deemed necessary to respond to radiological accidents.

Prior to the filing of this action, Strongsville had developed no radiological emergency plan although it has a plan for all other natural and hazardous materials emergencies. Strongsville safety personnel have attended training events which touched upon radioactive issues and have received materials from the County DSA regarding the same issues. Prior to this action, the safety force officials, however, had never requested from the Ohio DSA or any federal agencies any information, assistance, or guidance to prepare them to respond to a radiological transportation accident. Furthermore, Strongsville did not request the FEMA–REP–5 guidance pamphlet and only received a copy from the County DSA in the same month this lawsuit was filed.

Likewise, Cuyahoga County never requested any guidance or assistance from federal agencies concerning radiological materials. In 1982, the County made a request to the State DSA for training of personnel with regard to radiological materials. Due to time and funding limitations, a State instructor was not available. The Director of the County DSA defined Cuyahoga County's training needs as unique and more extensive because of the large number of municipalities within the County. Therefore, at that time, the County began the three-step process for training a local instructor who could then teach radiological response techniques within the County. The County individual who began this process did not complete the second FEMA course nor apply for the Cobalt 60 User's Certificate. Furthermore, that individual was never made available to teach the courses at the County level, although requests were made from municipalities within the County.

Based on the foregoing, the Court concludes that prior to this lawsuit the County DSA and the safety forces of Berea and Strongsville had failed to adequately take advantage of the training programs and information offered by the federal agencies or the Ohio DSA. Clearly, neither the federal nor state statutory and regulatory schemes could be interpreted to require federal and state agencies to search out every local government, determine the degree of its capability to respond to a nuclear transportation accident, and provide any deficit in training and equipment. Thus, it is plaintiffs' own inaction which has caused their unpreparedness. Therefore, plaintiffs have failed to connect their alleged injury of unpreparedness to the challenged conduct of the defendants, and, according-

ly, do not meet the second criterion of standing.

■ Finally, plaintiffs have failed to show that their alleged unpreparedness is likely to be redressed by a favorable decision of this Court. Neither the federal nor state agencies have a mechanism to compel plaintiffs to accept training or develop plans for responding to a nuclear transportation accident. Prior to the filing of this lawsuit, plaintiffs failed to seek out the training opportunities available to them. If the Court ordered federal and state agencies to provide further training and equipment, plaintiffs would still not be compelled to take advantage of them. Therefore, plaintiffs have failed to meet the third criterion of standing, that a favorable decision by this Court would redress plaintiffs' alleged injury of unpreparedness.

Accordingly, since plaintiffs have failed to demonstrate that their lack of preparedness meets any of the three criteria for Article III standing, the Court concludes that plaintiffs cannot invoke the jurisdiction of this Court based on this alleged injury.

Therefore, remaining before the Court is plaintiffs' second alleged injury of economic loss which has resulted from plaintiffs' funding of the training of personnel and purchase of equipment necessary to respond to a nuclear transportation accident. The Court finds that plaintiffs' claims of economic injury are not supported by the record.

■ Cuyahoga County bases its allegation of economic loss partially upon a Resolution passed by the Commissioners on October 11, 1983, authorizing an expenditure of up to $400,000 for organizing a cooperative effort for County firefighters to deal with hazardous materials accidents. This Resolution is an authorization to expend funds in the future, and the County provides no evidence that such funds have been expended.

More important, the Resolution authorizing the expenditure came out of a County-wide Hazardous Materials Response Program initiated by the County DSA, the Fire Chief's Association and Community Services nine months before the Resolution was passed. The Commissioners authorized the expenditure of the $400,000 in response to the needs determined in the entire nine-month process of establishing the program, rather than specifically as the result of the shipments of nuclear waste at issue in this lawsuit. Therefore, the County's expenditure of this $400,000 cannot be causally linked to the challenged acts of defendants. Absent this causal link, Cuyahoga County lacks standing to invoke the jurisdiction of this Court based on the economic loss of $400,000 as evidenced by its October 11, 1983 Resolution.

As to the Cities of Berea and Strongsville, the evidence indicates that the Cities have not in actuality suffered any economic harm. The few expenditures made by the Cities in the fall of 1983 for geiger counters and replacement personnel for those attending radiological training sessions have not exceeded the amounts budgeted by the Cities for training and equipment. In fact, a balance still remained in the training and personnel budgets after expenditures for these items. The Cities have not suffered an economic loss beyond what their budgets contained for training and personnel and have therefore suffered no injury in fact.

■ Furthermore, neither Berea nor Strongsville has developed a comprehensive plan to train and equip their forces for a radiological accident. Therefore, the projected expenditures for equipment and training of personnel claimed by plaintiffs are highly speculative and uncertain and, thus, are too conjectural to confer standing on plaintiffs.

■ Moreover, a local government has not sustained an injury merely because it has incurred expenses in preparing for a possible radiological accident. In a closely analogous case to the one at hand, *In re TMI Governmental Entities Claims*, 544 F.Supp. 853, 855 (M.D.Pa.1982), the court held that public expenditures incurred by

the government entities in responding to an actual radiological emergency could not be recovered from utility defendants absent statutory authority to maintain suit for the expenses. The court based its holding on the principle that responsibility for public expenditures made in the performance of governmental functions fall upon the governmental body providing the service absent statutory authority to the contrary. *Id.*

In paragraph 30 of their complaint, plaintiff local governments state that they are "responsible for the provision of police, fire, emergency medical and similar such public services to preserve the peace and protect persons and property within their respective jurisdictions." Such responsibilities clearly constitute governmental functions. Thus, absent statutory authority to the contrary, plaintiff local governments must cover the costs of providing these services to their citizens and cannot claim an injury for making such expenditures.

Neither the federal nor state statutory and regulatory scheme requires the federal or state agencies to search out every local government, determine the degree of its capability to respond to a nuclear transportation accident, and then fund the improvement of any deficiency in equipment or training. The only funding provision in the federal regulatory scheme falls under 44 C.F.R. § 360. This regulation establishes the Emergency Management Training Program in which the FEMA assists the states with financial and human resources to fill the unique training needs of local governments. As already noted, FEMA monies have partially funded such state training events.

Likewise, the state statutory scheme does not mandate that the Ohio DSA or any other agency provide direct financial assistance to the safety forces of local governments to purchase equipment or train personnel for response to nuclear transportation accidents. Neither does it require the Ohio DSA to cover the operating and staffing expenditures for the Cuyahoga County DSA, the County's second

alleged economic injury. In fact, § 5915.09 of the Ohio Revised Code authorizes county-wide civil defense organizations to make appropriations for the payment of expenses for their local activities for civil defense.

Plaintiffs have failed to show either an actual economic loss or that defendants have any responsibility for funding training or equipment. The Court finds that their allegations of economic loss do not meet the "injury in fact" requirement for Article III standing. Thus, plaintiffs lack standing to invoke this Court's jurisdiction based on an allegation of economic loss resulting from their funding of training and equipment.

Based on its finding that plaintiffs lack standing premised on the alleged injuries of unpreparedness to respond to a nuclear transportation accident and economic loss suffered from preparation for such an event, this Court holds that it lacks subject matter jurisdiction to adjudicate the allegations in this action.

Although the Court sympathizes with plaintiffs' concerns regarding their capabilities to respond to a nuclear transportation accident, "the cases and controversies" language of Article III allows the federal courts to hear actions only where the litigants can show a distinct injury rather than a generalized grievance. The remedy for the generalized concerns raised in this action therefore lies more appropriately in the legislative branch.

Although they lack standing in the instant action, plaintiffs were not without remedy to impact the federal laws and regulations involved in this lawsuit. Persons concerned with issues have the opportunity to influence laws and regulations during the legislative and administrative process. Specifically, proponents and opponents of specific legislation or regulations may make their positions heard by contacting the public officials involved in the legislative or administrative process, or by appearing at the public hearings required during the administrative agency rule-making process.

Accordingly, this Court grants defendants' motions to dismiss for lack of subject matter jurisdiction pursuant to Fed.R. Civ.P. 12(b)(1) based on plaintiffs' failure to demonstrate Article III standing requirements, and hereby dismisses plaintiffs' complaint.

IT IS SO ORDERED.