Donald L. DAVIS and Russell Correll, Appellants,

v.

J.C. NICHOLS COMPANY and Harwood Operating Company, Respondents.

No. WD 37385.

Missouri Court of Appeals, Western District.

June 10, 1986.

Application to Transfer Denied Sept. 16, 1986.

Christopher C. Marsh, Springfield, for appellants.

Timothy S. Frets, Mary-Michael Douglas, Baker & Sterchi, Kansas City, for respondents.

Before CLARK, C.J., and KENNEDY and LOWENSTEIN, JJ.

CLARK, Chief Judge.

Donald L. Davis and Russell Correll filed this suit for damages against J.C. Nichols Company and its subsidiary, Harwood Operating Company, alleging maintenance by

the defendants of a nuisance which had caused plaintiffs' injuries. Davis also asserted on his behalf alone a claim for retaliatory eviction. The latter claim contained some six counts which were ruled in defendants' favor by summary judgment. The remainder of the case was tried on the nuisance claim counts and, at the close of the plaintiffs' evidence, the trial court directed a verdict for defendants. The judgment is reversed in part and the case is remanded for a new trial on the nuisance claim counts.

The controversy arose in consequence of the construction by Nichols and Harwood of a customer-employee parking lot on residentially zoned property at the northeast corner of 46th Street and Pennsylvania Avenue in Kansas City. The location of a parking lot on the residential tract was pursuant to a special permit issued by the Kansas City Board of Zoning Adjustment over protests by Davis, Correll and others.

At the time in question, Davis lived in a residence at 4539 Pennsylvania and Correll lived at 4527 Washington. Correll also owned dwellings at 4529 and 4531 Washington. The parking lot built by Nichols, after demolishing homes previously on the site, extends on the north side of 46th Street from Pennsylvania to Washington. The Davis home on the east side of Pennsylvania and the Correll properties on the east side of Washington thus lie to the north of the parking lot.

The claims against Nichols and Harwood were in two components. Davis and Correll conjunctively asserted that Nichols and Harwood had created and were continuing a private nuisance, first by the manner and character of the demolition and parking lot construction activity, and second by the operation of the parking lot itself which caused air and noise pollution and disturbed the plaintiffs' use and enjoyment of their respective properties. The other component of the claims was advanced by Davis alone and resulted from involuntary termination of Davis' rental tenancy in the Pennsylvania residence. Davis alleged that Nichols and Harwood, who owned the residence, caused him to be evicted in retaliation for his opposition to the parking lot project. All claims asked compensatory and punitive damages.

Disposition of the retaliatory eviction claims was made first. The defendants moved for summary judgment and the trial court sustained the motion on the ground that Davis failed to state a cause of action on which relief could be granted. On this appeal, Davis argues, in effect, that if Missouri does not recognize the doctrine of retaliatory eviction it should. Alternatively, he contends that the facts bring his case within the doctrine of prima facie tort. We address this aspect of the appeal first.

■ In entering summary judgment for the defendants on the retaliatory eviction claim, the trial court entered no findings beyond the conclusion that a cause of action was not stated. Looking to the motion and accompanying exhibit, however, it appears that the basis for the court's judgment was its conclusion that Nichols was entitled to evict Davis on the ground of non-payment of rent. From this it would follow that Nichols did not commit an unlawful act in terminating the Davis tenancy for which there was justification irrespective of the parking lot controversy.

There was no dispute that Davis occupied the residence in question under a lease from Harwood Operating Company and that Davis was given a notice to vacate the premises for non-payment of rent for the months of May, June and July, 1983. Although some dispute was raised as to the amount of rent arrearage, Davis acknowledged an unpaid debt for more than one month's rent past due. There was no question that Harwood as agent for Nichols was lawfully entitled to terminate the month-to-month tenancy on thirty days notice even if the rent payment had been current.

Davis attempted to plead his case on two possible theories, the first being based on retaliatory eviction, that is, a claim that the lease was terminated because Davis had exercised his right to protest that conduct of Nichols in constructing and maintaining

the parking lot. He apparently seeks to pursue this theory by analogy to the cause of action given tenants under § 441.620, RSMo.1978 where a prior complaint has been made against a landlord who maintains inadequate or deficient rental housing. The theory is not viable for several reasons. In the first place, the protection against landlords who maintain property in violation of housing codes is statutory in origin and is limited to the conduct and circumstances described in the statute. There was no deficiency contended by Davis to exist in the property he was renting. Moreover, even under § 441.620, RSMo. 1978, a tenant retains his rights only if he maintains a current status in his rent payments. Davis had a consistent record of late payment of his rent and was delinquent by his own admission when his tenancy was terminated. Having no cause to remain in possession on this account, he is not entitled to maintain a cause of action against Nichols and Harwood merely because some other improper motive may have prompted respondents to exercise a right available to them on legitimate grounds.

■ As a counterface of the retaliatory eviction theory, Davis argues, in effect, that Nichols had waived its right to declare the rent payments in default by previously accepting late payments and by acquiescing in his continued occupancy of the property despite accrual of unpaid rent. Under this theory, Nichols was not entitled to rely on the non-payment of rent as the basis for eviction thereby leaving as the only cause the retaliation for the complaints over the parking lot episode. Assuming a waiver by Nichols of its entitlement to prompt payment, an assumption not validated by pleading or proof of a manifest intention by Nichols to waive entitlement to current rents, *Lucas Hunt Village Co. v. Klein*, 358 Mo. 1054, 218 S.W.2d 595, 599 (banc 1949); *Spencer's River Roads v. Unico Management*, 615 S.W.2d 121, 125 (Mo. App.1981), the argument nonetheless fails. Whether Davis was current in his rent or delinquent, Nichols was entitled to terminate the month to month tenancy by giving

Davis one month's notice. Section 441.060, RSMo.1978.

■ The alternate theory of a cause of action, prima facie tort, was based on acceptance of Nichols' lawful right to evict Davis but on the further allegation that the act of terminating the tenancy was maliciously motivated by an intention to cause injury to Davis. The components of a cause of action in prima facie tort are: (1) an intentional lawful act by the defendant; (2) an intent to cause injury to the plaintiff; (3) injury to the plaintiff; and, (4) an absence of any justification or an insufficient justification for the defendant's act. *Dowd v. General Motors Acceptance Corp.*, 685 S.W.2d 868, 872 (Mo.App.1984).

■ The foregoing elements were alleged by Davis in conclusionary language. Accompanying the Nichols motion for summary judgment was a copy of the notice to vacate served on Davis stating the basis for the request for possession to be non-payment of rent. The contention which Nichols thereby advanced was that Davis' failure to pay rent was justification for the act about which the petition complained. No pleading or argument in the record on appeal contains any factual support for the assertion that failure to pay rent did not justify the action taken by Nichols to terminate the Davis tenancy. The burden was on Davis in responding to the motion for summary judgment to present facts sufficient to support a finding that termination of his tenancy was unjustified. He failed to do so and the trial court was therefore correct in ruling against the cause of action in prima facie tort. *Southwestern Bell Telephone Co. v. Buie*, 689 S.W.2d 848, 850 (Mo.App.1985).

The grant of summary judgment in favor of Harwood and Nichols on Counts III, IV, V, VI, VII and VIII of Davis' Second Amended Petition is affirmed.

The second and substantial aspect of this appeal concerns error in the trial of the nuisance counts asserted against Nichols and Harwood by Davis and Correll. Points II through VI of appellants' brief raise

these issues which, as the following discussion will demonstrate, share a common theme. Some additional facts are required to understand the questions presented.

The land on which the customer-employee parking lot was to be located was at the time zoned under the Kansas City Ordinances for residential use, District R–4, Low Apartments. Under § 39.446, I (1981) of the Revised Ordinances of Kansas City, Missouri[1], the Board of Zoning Adjustment of Kansas City may grant a special permit for construction of a customer-employee parking lot in a residential district (Districts R–3, R–4, R–4–0, R–5 and R–5–0) as an auxiliary use for customers and employees of neighboring business establishments. All of the lot or lots so developed must be within 500 feet of the business or industrial district. Nichols made application for such a permit as to the subject property. The permit was granted September 14, 1982 and the parking lot was thereafter constructed. In the course of construction, some buildings on the site were demolished.

Davis and Correll along with a group called The Plaza Westport Neighborhood Association unsuccessfully opposed the permit before the zoning board and later failed in a judicial review of the board action because the suit was not properly before the court. This action followed, the gist of the claims being that Davis and Correll were damaged because the construction and operation of the parking lot in proximity to their residences constituted a private nuisance. Particular allegations, and the proof which followed at trial, were that the parking lot created noxious fumes, noise and air pollution through operation of equipment during construction and of automobiles after completion and that numbers of people gathered on the lot and engaged in unseemly acts. As was noted above, the trial court directed a verdict for the defendants at the close of plaintiffs' evidence.

In five of the points of error set out in appellants' brief they complain of the admission of certain evidence offered by defendants and the exclusion of evidence tendered by plaintiffs, all consisting of Kansas City municipal ordinances and related matters. The first grouped contentions refer to the zoning ordinance cited above and its availability as an official shield to defendant against the complaints that the parking lot constituted a private nuisance.

A significant element of the defendants' anticipated appeal to the jury was based on the premise that the City of Kansas City, by issuing a permit for the construction and operation of the parking lot, had given official sanction to the activity and therefore it could not be a nuisance. To support this argument, the defendants cross-examined the plaintiffs and their witnesses basing inquiry on the assumed fact of the parking lot special permit. Appellants complain that evidence regarding the permit and the inference that it constituted a defense was irrelevant and prejudicial and should not have been received.

Before trial of the case began, appellants presented a motion in limine seeking to prevent the defendants from offering evidence that zoning approval for the parking lot had been obtained. The court overruled the motion and affirmatively held that defendants could introduce that evidence. The questions posed at trial by defendants followed and the evidence regarding the permit came in without objection.

■ The courts have repeatedly held that a ruling on a motion in limine is merely a preliminary expression of the court's opinion as to the admissibility of evidence and that a party still has the burden of interposing a specific objection during the trial to preserve the point for appellate review. *Frye v. Meramec Marina, Inc.,* 673 S.W.2d 451, 454 (Mo.App.1984) and cases there cited. Any error which occurred in admission of the permit evidence was waived by the failure of appellants to

1. All ordinance references hereafter made are to the Revised Ordinances of Kansas City a/k/a    The Zoning Ordinance.

raise specific objections when the questions on the subject were put to appellants' witnesses.

Assuming any error in receiving the special permit in evidence was waived, appellants next contend they should have been entitled to show the terms of the city ordinance, § 39.446 I (1981), under which the Nichols company obtained authority · to build the lot. At trial, appellants sought to introduce the ordinance in evidence and to offer testimony that the lot was not constructed as the permit authority required. In particular, the evidence would have shown that the lot as constructed exceeded the 500 foot maximum space limitation from the nearest commercial or industrial zoned land. The trial court refused to allow the ordinance in evidence and therefore the overextension of the parking lot area was not proved.

Respondents contend the zoning ordinance, § 39.446 I (1981), was irrelevant to any issue in the case and that plaintiffs were seeking to use the ordinance in a collateral attack on the decision by the Board of Zoning Adjustment. They say this constitutes an attempt to reargue a point already determined, the entitlement of Nichols to be granted the special use permit. Respondents say that having lost the decision before the Board of Zoning Adjustment, where Davis and Correll were afforded the opportunity to be heard and having failed in a judicial challenge to the grant of the permit, they are not entitled in this action to question the decision authorizing the permit under the zoning ordinance. Appellants deny any offer to contest the decision to issue the permit. For purposes of the nuisance claims, appellants admit that Nichols and Harwood had lawful authority to build the parking lot and to maintain it pursuant to the permit. The ordinance was offered, according to appellants, to prove the limit of the permitted area within a distance of 500 feet from the business zoned district. If, as appellants say their proof would show, the property actually used for the parking lot as constructed exceeds the boundary as limited by the ordinance, the evidence would con-

stitute proof countering the defense of the permit itself and would also be some evidence bearing on the reasonableness of property use. These arguments lead to a consideration of what constitutes a nuisance and how that concept interrelates with controlled land use by zoning.

▋ Nuisance is the unreasonable, unusual or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his property. *Frank v. Environmental Sanitation Management*, 687 S.W.2d 876, 880 (Mo. banc 1985). Nuisance is a condition, not an act or failure to act and it is therefore immaterial in determining liability to inquire whether defendant was negligent and what his intention, design or motive may have been. *White v. Smith*, 440 S.W.2d 497, 502–503 (Mo.App.1969). The zoning of a district may be relevant for consideration in a nuisance claim but only as an indicia of the relative freedom from pollution which neighboring property owners may expect. Merely because an area may be zoned industrial (or business or commercial) does not justify the maintenance of a nuisance. *Fuchs v. Curran Carbonizing and Engineering Co.*, 279 S.W.2d 211, 218 (Mo.App. 1955). The fact that property is zoned for a business use does not preclude injured property owners from suing to abate a nuisance in the absence of other facts offsetting their rights. *Scallet v. Stock*, 363 Mo. 721, 253 S.W.2d 143, 146 (1952).

▋ The concurring opinion in *Frank v. Environmental Sanitation Management, supra* at 885, points out that under Missouri law, fault is not an issue in nuisance cases. The question is reasonableness of use which is, in turn, an issue for the jury. MAI 22.06, the instruction directing the verdict in private nuisance cases, includes this component. The decision must be on a case by case basis. What is a reasonable or unreasonable use does not depend on exact rules but on the circumstances of each case including the locality and character of the surroundings, the nature and value of the use and the

extent of harm involved. *Clinic and Hospital v. McConnell,* 236 S.W.2d 384, 391 (Mo.App.1951).

In the present case, it was proper for defendants to show that the parking lot was a permitted use under zoning regulations, not because that excused all activities and intrusions which the use produced, but to show that neighbors such as Davis and Correll were not entitled to expect the enjoyment of their property free of any nearby commercial or quasi-commercial activity. The permit was not a license exempting defendants from liability for a nuisance but it was a factor the jury was entitled to consider in determining whether the parking lot use of which plaintiffs complained was reasonable.

By the same analysis, the plaintiffs were entitled to show that the parking lot was in violation of the special permit, if such were the case. Just as proof that a business is being conducted in an area zoned only for residential use is some evidence that the business use is unreasonable, the extension of defendants' parking lot here beyond the permitted area is proper evidence for the jury to consider in deciding whether the intrusion upon plaintiffs' property was unreasonable. This is especially true in this case where defendants placed heavy reliance on the special permit as justification for the claim that the parking lot activity was a reasonable use of the land. The only method open to plaintiffs for proof of the overextension of the parking lot was introduction in evidence of the ordinance setting the 500 foot limitation. The trial court erred in refusing to admit the ordinance in evidence.

In the fifth point of their brief, Davis and Correll assert that the trial court erred in refusing to admit in evidence §§ 25.1 (1956), 25.2 (1972), 25.3 (1956), 25.4 (1956), 25.5 (1956), 25.14 (1971) and 25.15 (1972) of the ordinances of Kansas City. These ordinances in general prohibit maintenance of nuisances, define what constitute nuisances and describe complaint procedures. Plaintiffs repeatedly attempted at trial to introduce a certified copy of the ordinances but the court refused admission on the ground the ordinances were not pertinent.

The police power extends to the definition of acts which constitute a nuisance and, if it acts reasonably, a legislative body may declare that to be a nuisance which was not such at common law. *Clutter v. Blankenship,* 346 Mo. 961, 144 S.W.2d 119, 121 (1940). An ordinance or statute setting out a standard or duty may be relevant proof that a defendant has breached an obligation owed to a plaintiff. Thus, in *Stegan v. H.W. Freeman Construction Co.,* 637 S.W.2d 794 (Mo.App. 1982), it was held that the St. Louis County Plumbing Code was relevant evidence in a suit by a home buyer against the construction contractor for faulty construction of water service lines. *State ex rel. Wells v. Mayfield,* 365 Mo. 238, 281 S.W.2d 9 (banc 1955) arose out of a wrongful death action in which it was claimed that the Kuhs Realty Company had maintained a private dump in a dangerous and hazardous condition. The opinion held that a St. Louis City ordinance regulating the operation of dumps was relevant evidence to prove the violation of a duty owed by the operator of the dump as a factor in establishing the wrongful death liability. Finally, in *Gaffner v. Alexander,* 331 S.W.2d 622 (Mo. 1960), it was held that a claimant in an automobile collision case was entitled to offer in evidence a statute regulating U-turns and prove a violation of the statute as some evidence of negligence.

The ordinances offered by plaintiffs in this case declared that substances and establishments which emitted foul, unhealthy or noxious odors were deemed to be nuisances. Also prohibited was any business or enterprise the conduct of which caused or produced noise, smoke, dust, odors or gases if located within 150 feet of a building used exclusively for residential purposes. The plaintiffs' evidence was to the effect that the principal complaint about the parking lot was the noise and emissions of exhaust fumes from the automobiles and trucks which used the parking

lot. The evidence was also uncontradicted that the homes occupied by Davis and Correll were less than 150 feet from the lot. Under the cases cited above, the ordinances defining and prohibiting nuisances constituted some evidence that the use made of defendants' property was unreasonable.

Respondents counter the argument regarding admission of the nuisance proscription ordinances by saying first that the terms "businesses or enterprises" used in § 25.4 (1956), Certain Businesses Near Residences, does not apply to their parking lot because that was not the legislative intent. No analysis or authority is cited for the statement. The fact is that the special parking lot variance to the prohibition which would otherwise prevail in a residential zoned area is available only if the parking lot is to be used in this case as an adjunct to the nearby commercial activity. Those who park in the lot are expected to be the employees or customers of the adjacent business. It is self evident that the parking lot is a component of the business or enterprise which it serves.

Respondents also say that the nuisance ordinance, if given the effect urged by Davis and Correll, is not to be considered under the facts here because to brand the parking lot operation as a nuisance would nullify the special permit provisions of the zoning ordinance. The argument seems to be that a valid special permit acquires preeminence over all other municipal ordinance regulation by the city codes. Cited as authority are cases which hold that statutes are to be harmonized and special statutes are to prevail over general ones. It is of course apparent that a permit to build a parking lot does not confer an exemption from observance of other ordinance restrictions nor is it a license for all possible offensive activity. A parking lot is not a nuisance per se. It is only when noxious odors and noise interfere with the peace and health of nearby residents that the ordinance respecting nuisances is applicable. In this case, the jury was entitled to consider the nuisance ordinance in deciding whether the subject parking lot as operated was unreasonable.

■ Additionally respondents contend the ordinances defining nuisances should not have been admitted in evidence because they were irrelevant to proof of negligence or ultra hazardous activity and, in any event, they were inadmissible because they were not pleaded. Although negligence may constitute the basis for an actionable nuisance, *Rebel v. Big Tarkio Drainage District,* 602 S.W.2d 787 (Mo.App.1980), a nuisance may exist irrespective of the degree of care. Nuisance is a condition and does not depend on the degree of care used. *Frank v. Environmental Sanitation Management, supra* at 880.

■ There was no contention in the present case that the defendants were negligent, only that the condition created by the parking lot was a nuisance. The ordinances were relevant as evidence of what conditions do amount to a nuisance irrespective of any aspect of negligence. As to the pleading issue, there was a general reference in the petition to the violation of "numerous ordinances of the City of Kansas City." Where an ordinance is to be used merely as evidence, it need not be pleaded with specificity. *Detling v. Edelbrock,* 671 S.W.2d 265, 271 (Mo. banc 1984).

In a final point, appellants contend the trial court erred in denying them proof of the defendants' financial condition as a prelude to claiming punitive damages. Whether punitive damages are allowable will depend on the allegations and proof in this case on retrial. The parties in their briefs dispute whether credible evidence was introduced at the first trial to show, among other possible facts, the failure of defendants to take any action intended to remedy the objectionable conditions at the parking lot. It would be pointless to address that issue now, first because the evidence on retrial may and probably will differ in some respects and, second because questions of credibility are for the fact finder. The submission of punitive damages will be a question to be decided by the trial judge once the evidence tendered to support the claims has been adduced.

The judgment entered in favor of J.C. Nichols Company and Harwood Operating Company on Counts III, IV, V, VI, VII and VIII of the second amended petition is affirmed. The judgment directing a verdict in favor of J.C. Nichols Company and Harwood Operating Company on the remaining counts asserting a cause of action for maintenance of a nuisance is reversed and the cause as to those counts is remanded for a new trial.

All concur.