Robert WILLIAMS, Sr.,
Plaintiff–Appellant,

v.

MONSANTO COMPANY, Defendant–Respondent.

No. 60799.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 8, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 14, 1993.

Gregory G. Fenlon, Godfrey and Fenlon, St. Louis, for plaintiff-appellant.

Thomas M. Carney, Joel I. Dennis, Mark G. Arnold, Husch & Eppenberger, St. Louis, for defendant-respondent.

SMITH, Judge.

Plaintiff appeals from the judgment of the trial court based in part on a jury verdict on plaintiff's claim of nuisance and in part from the court's direction of a defendant's verdict on plaintiff's trespass count. We affirm.

Plaintiff owned and operated an automobile repair business on land abutting property owned by Monsanto upon which it operates a chemical plant. Beginning in the spring of 1984 and continuing for several months, particulate from the Monsanto plant fell on occasion on the premises used by plaintiff "dusting" his and his customers' vehicles. Monsanto admitted that particulate did fall on several occasions on the plaintiff's premises although it disputed that the severity of the fall-out was as plaintiff contended. Plaintiff also contended that the particulate, sodium tripoly-

phosphate (STP), caused pitting of the painting of customers' cars and resulted in loss of business. Monsanto's evidence was that STP is a food additive used in a variety of products such as pasta and canned hams and does not cause pitting of automobile paint. Only plaintiff professed to have found such pitting. Monsanto would provide for having cars dusted by the particulate to be cleaned by a neighborhood car wash.

Monsanto expended approximately $500,000 attempting to identify the source of the particulate leak and to remedy it. Testimony from governmental employees involved with pollution control indicated that Monsanto was extremely cooperative and involved in attempting to correct the problem. Some of the complaints made against Monsanto turned out to involve emissions from a neighboring plant, Carondolet Coke Plant. Two witnesses with business in close proximity to plaintiff testified that they had no problems in operating their businesses in the area and had never observed or had complaints by customers of damage to their automobiles caused by white dust from Monsanto.

Plaintiff contended that the loss of customers caused him to have to close his business with a resulting loss of income. There was considerable evidence that plaintiff's business was a losing proposition before any complained of emissions occurred, that he was seriously overextended before the emissions, and that none of his major customers reduced their business during the period in question, although he had lost the customer providing about 50% of his revenue in the year before the emissions began for reasons unrelated to the emissions.

Plaintiff's amended petition was in fourteen counts including among others trespass, nuisance, negligence, intentional infliction of emotional distress, and consortium claims by plaintiff's wife. The court limited the trial to trespass and nuisance

and at the close of the evidence, refused to instruct on the trespass issue thereby effectively directing a verdict on that claim. The jury unanimously found for defendant on the nuisance claim. On appeal plaintiff challenges the court's action in directing a verdict on the trespass claim, in failing to grant a judgment notwithstanding the verdict to plaintiff on the nuisance claim, and in failing to allow evidence by plaintiff of his physical and mental suffering allegedly resulting from the loss of his business.

■ The availability and relationship between nuisance actions and trespass actions in suits involving pollutants was discussed thoroughly by Judge Simon in *Maryland Heights Leasing, Inc. v. Mallinckrodt*, 706 S.W.2d 218 (Mo.App.1985). For trespass to lie the pollution must be at a level so as to constitute an actual interference with the possession of the land, not merely interference with its use and enjoyment. *Id.* at [14–15]. Quoting from *Borland v. Sanders Lead Co.*, 369 So.2d 523 (Ala.1979) [8, 11–14] the court stated that "if, as a result of the defendant's operation, the polluting substance is deposited upon the plaintiff's property, thus interfering with his exclusive possessory interest by causing substantial damage to the *res*, then the plaintiff may seek his remedy in trespass,...." [1] *Maryland Heights, supra* at [13]. Nuisance, on the other hand, requires an interference with the use and possession of the land. As stated in *Maryland Heights*, again quoting from *Borland*, "For example, if the smoke or polluting substance emitting from a defendant's operation causes discomfort and annoyance to the plaintiff in his use and enjoyment of the property, then the plaintiff's remedy is for nuisance."

■ The evidence presented here all dealt with the effect of the STP on the operation of the defendant's business. None of the evidence dealt with the damage which the STP did to the property

---

**1.** Several cases have indicated that trespass occurs upon unauthorized entry, regardless of the amount of force used or the damage done. *See Vecchiotti v. Tegethoff,* 745 S.W.2d 741 (Mo.App. 1987) [10–12]; *Crook v. Sheehan Enterprises,* *Inc.,* 740 S.W.2d 333 (Mo.App.1987) [1, 2]; *Weldon v. Town Properties, Inc.,* 633 S.W.2d 196 (Mo.App.1982) [7, 8]. Each of those cases involved actual physical entry by a person, not entry by airborne pollutants.

itself. The evidence established that whatever injury plaintiff suffered it was to the use and enjoyment of his property and was not substantial damage to the res itself. The trial court did not err. in directing a verdict on the trespass claim.

 Plaintiff next contends that the evidence established as a matter of law that he was entitled to a verdict on the nuisance claim. Nuisance requires that one unreasonably use his property such that it substantially impairs the rights of another to peacefully use his property. *Racine v. Glendale Shooting Club, Inc.*, 755 S.W.2d 369 (Mo.App.1988) [1–3]; *Davis v. J.C. Nichols Company*, 714 S.W.2d 679 (Mo.App.1986) [6–9]. Whether a use is unreasonable to the point of a nuisance depends upon factors such as the locality, character of the neighborhood, nature of use, extent of injury, and effect upon enjoyment of life. *Racine, supra; Davis, supra*, at [10, 11].

 Here no other neighbors complained during the period in question. The area was largely industrial, with a coke plant and a cement plant nearby. Monsanto made substantial, expensive efforts to diagnose and correct the problem. It provided car cleaning at its expense when requested for vehicles which were dusted by STP. There was considerable evidence that plaintiff exaggerated his claims and that his business difficulties arose from causes other than Monsanto. The questions of whether a use is "unreasonable" and whether it impairs "substantially" the rights of another to use his property are particularly fact intensive and are particularly suited for jury resolution. *Davis, supra*, at 10, 11]. The trial court did not err in denying plaintiff's motion for judgment notwithstanding the verdict and for new trial premised on the absence of evidence to support the verdict.

 It is dubious that we need reach plaintiff's final point. Suffice it to say the physical and mental suffering plaintiff sought to introduce arose not from the pollutant itself but from plaintiff's concern about the loss of his business. He sought, for instance, to introduce evidence of a heart attack occurring six years after the pollution occurred which he attributed to the loss of his business. Such injuries are consequential and cannot be recovered in this type of action. *Wheeler v. Community Federal Savings and Loan Assoc.*, 702 S.W.2d 83 (Mo.App.1985) [3]. The trial court did not abuse its broad discretion in excluding the testimony.

Judgment affirmed.

GARY M. GAERTNER, P.J., and STEPHAN, J., concur.