**MARYLAND HEIGHTS LEASING, INC., et al., Plaintiffs-Appellants,**

v.

**MALLINCKRODT, INC., Defendant-Respondent.**

No. 47762.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 31, 1985.

Motion for Rehearing and/or Transfer
Denied Jan. 28, 1986.

Application to Transfer Denied
April 15, 1986.

---

Donald H. Whaley, Whaley & McAuliffe, Clayton, for plaintiffs-appellants.

William A. Richter, St. Louis, Covington & Burling, Washington, D.C., Raymond M. Asher, Mallinckrodt, Inc., St. Louis, for defendant-respondent.

SIMON, Judge.

Appellants Maryland Heights Leasing, Inc. (Maryland) and Bennett Paper Corporation (Bennett) appeal from the trial court's dismissal of their petition against Mallinckrodt, Inc. (Mallinckrodt). Maryland leases approximately six acres of property to Bennett for business operations. Adjoining appellants' property on three sides is a plant, owned and operated by Mallinckrodt, which produces nuclear and radioactive medical pharmaceuticals and supplies. Mallinckrodt also operates two cyclotrons at the plant site for the conversion of non-radioactive materials to radioactive materials. Although framed in four different counts sounding in nuisance, negligence, trespass, and engaging in ultrahazardous activities, appellants' petition essentially alleges tort liability for damage caused to their property by the low-level radiation emissions from Mallinckrodt's operations. Mallinckrodt filed its motion to dismiss the petition citing Rule 55.27(a)(1) and (6), and stating that the trial court does not have subject matter jurisdiction because the action is barred under the doctrines of federal preemption and political question. The trial court dismissed appellants' petition for lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted.

We first dismissed appellants' appeal by order opinion for failure to properly preserve certain issues for our review. In response to our dismissal, appellants filed a motion for rehearing and to file supplemental briefs. We subsequently withdrew our order of dismissal and permitted the parties to file additional briefs affording us the opportunity to dispose of the appeal on its merits. We reverse and remand.

■ Initially, we review whether the preemption or political question doctrines are triggered, thereby precluding subject matter jurisdiction in our state court. State law, and thus state law remedies, are preempted if federal law so pervades a given field as to evidence a congressional intent to occupy that field. *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984). The test for determining preemption in the nuclear energy field is: (1) whether there is an irreconcilable conflict between the federal and state standards or (2) whether the imposition of a state standard would frustrate the objectives of the federal law. *Silkwood*, 104 S.Ct. at 626; *Bennett v. Mallinckrodt, Inc.*, 698 S.W.2d 854, 859 (Mo. App.1985).

Mallinckrodt argues that imposition of tort liability under any of the common law remedies afforded appellants under the laws of Missouri essentially demands that its actions conform to state law requirements, despite its adherence to federally permissible emission standards. Mallinckrodt concludes that tort liability under Missouri law effectively establishes a state emission release standard, thereby creating an irreconcilable conflict between the federal and state standard. We rejected this position earlier in *Mallinckrodt* stating: "common law liability does not impose requirements on Mallinckrodt; rather, it allows Mallinckrodt to choose between risking liability by not changing its behavior or attempting to negate the risk by lowering its emission rates," *id.* at 860, and we likewise reject it here. Our analysis in *Mallinckrodt* also disposes of Mallinckrodt's argument here that imposition of state tort liability would frustrate the objectives of the federal law, *i.e.*, promotion of private nuclear development, and we need not reiterate it. *See Mallinckrodt*, 698 S.W.2d at 860–62.

■ The political question doctrine establishes a limitation on the authority of the judiciary to resolve issues, decidedly political in nature, that are properly left to the legislature. *Id.* at 863–64[11]. The propriety of nuclear related activities is a

political question properly committed to the legislative and executive branches of our government. *Id.* at 864[13]. Nonetheless, individual tort recoveries from those activities normally are not precluded by the political question doctrine. *Id.* Appellants are not trying to establish standards that conflict with legislative determinations; they are seeking compensation for injuries. *Id.* Accordingly, we find the political question doctrine inapplicable.

We next review the dismissal of appellants' petition for failure to state a claim. Appellate courts reviewing a petition dismissed for failure to state a claim must construe the petition liberally and favorably to the plaintiff, giving the plaintiff the benefit of all inferences fairly deducible from the facts stated. *Mason v. Williams Discount Center, Inc.,* 639 S.W.2d 836, 838 (Mo.App.1982). Our review on appeal determines only whether appellants' petition can withstand a motion to dismiss, not whether the petition will withstand a motion to make more definite and certain or whether appellants will be able to sustain their burden of proof at trial.

■ Count I of appellants' petition sounds in nuisance. Nuisance is the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his property. *Frank v. Environmental Sanitation Management, Inc.,* 687 S.W.2d 876, 880[1] (Mo. banc 1985). Appellants' petition in the pertinent part of Count I provides:

6. The defendant, MALLINCKRODT, INC., expanded said site so that it presently adjoins the property owned and leased by the respective Plaintiffs on three (3) sides, at no time making any representation that its operations would use or require radioactive materials.

7. That at some time since the commencement of its operations, Defendant has used and continues to use radioactive materials in such a manner that is unreasonable and unlawful.

8. That, at the present time, Defendant has operated and continues to expand the operation of two cyclotrons at said plant site for the sole purpose of converting non-radioactive materials to radioactive materials and that these operations are being conducted in an unreasonable and unlawful manner.

9. That at some time since the commencement of its operations at said plant site, Defendant has unreasonably allowed, intentionally and unreasonably allowed, negligently allowed, recklessly allowed and willfully, wantonly and maliciously allowed the emission of radiation in and around the property located at 11480 Warnen Road, Maryland Heights, Missouri, impairing its use and its value. to the respective Plaintiffs.

Construing the petition liberally and favorably to appellants and giving appellants the benefit of all inferences fairly deducible from the allegations, we find the pleading sufficiently alleges that Mallinckrodt has unreasonably interfered with the use and enjoyment of appellants' property, that the interference is substantial, and that this interference has resulted in injury to appellants.

We turn now to the damages and relief sought in this count. Appellants seek compensatory and punitive damages, an injunction, costs and attorney's fees. We address each in turn.

■ Compensation for the loss or injury sustained is the measure of damages for nuisance. We note that the Congressional Committee's intention expressed in the legislative history of the 1957 amendment to the Atomic Energy Act of 1954 states that the damage to property included in the term "nuclear incident" does not include the diminution in value. However, this prohibition to recovery of damages for diminution in value applies only to actions challenging the location of an atomic energy activity at a particular site. Hence, the committee comment has no application here.

■ For its compensatory damages, Maryland Heights seeks ten million dollars for the diminution of its property's market

value. While diminution in value is the proper measure of damages for injuries to land from a permanent nuisance, the depreciation of the land's rental or usable value during the existence of the nuisance is the proper measure of damages from temporary and abatable injuries to land. *Massey v. Long*, 608 S.W.2d 547, 550 (Mo.App. 1980). A nuisance is temporary if it may be abated, and permanent if abatement is impracticable or impossible. *Frank*, 687 S.W.2d at 883. Thus, if the nuisance is found to be permanent, Maryland is entitled to seek the diminution in value of its property interests.

■ Bennett, on the other hand, seeks two million dollars compensatory damages for the "cost of moving its plant operations to another site in order to protect its business, for damages to its leasehold interest and business profits." We cannot ascertain whether its intention in seeking damages "to protect its business" is to prevent future harm or to compensate for injury resulting from the alleged nuisance. Generally, since all compensatory damages are recoverable under a nuisance claim, any damages reflecting the actual loss inflicted are included. An "injury" as an invasion of a legally protected right may cause either general or special damages; if the former, no special pleading is required, but, if the latter, the pleading must set forth factual matters that give reasonable notice of the nature and extent of the damages. *Rusk Farms, Inc. v. Ralston Purina Co.*, 689 S.W.2d 671, 681[20] (Mo.App.1985). If the jury determines the cost of moving is a direct and proximate result of Mallinckrodt's radioactive emissions, Bennett's damages as pleaded are properly recoverable as special compensatory damages. In addition to the cost of moving, Bennett seeks damages for its leasehold and business profits. Loss of profits directly resulting from the nuisance are compensable. *See Fuchs v. Curran Carbonizing and Engineering Co.*, 279 S.W.2d 211, 219[16] (Mo.App.1955). In short, we find that appellants have pleaded a claim for relief in nuisance.

■ Additionally, each appellant seeks punitive damages totaling five million dollars ($5,000,000) and the costs of the proceeding, including reasonable attorney's fees. In *Silkwood*, the Supreme Court found that an award of punitive damages for injuries sustained by the escape of plutonium from a nuclear facility was not preempted by federal regulation of nuclear facilities. 104 S.Ct. at 626[8]. Under Missouri's common law, it is well established that punitive damages are recoverable for a nuisance. *Ruppel v. Ralston Purina Co.*, 423 S.W.2d 752, 756[4] (Mo.1968). To recover such damages there should be a showing that the nuisance was knowingly and willfully maintained. *Vaughn v. Missouri Power & Light*, 89 S.W.2d 699, 702[5] (Mo.App.1935). Appellants' petition stating that Mallinckrodt "willfully, wantonly and maliciously allowed the emission of radiation" sufficiently advises Mallinckrodt of appellants' claim for punitive damages.

■ We have not been directed to nor are we able to find a statute authorizing attorney's fees. Usually attorney's fees are not recoverable without statutory authorization or contractual provisions. *Mayor of Liberty v. Beard*, 636 S.W.2d 330, 331[2] (Mo. banc 1982); *Ashworth v. Schneider*, 667 S.W.2d 16, 17[2] (Mo.App. 1984). The facts as pleaded and their reasonable inferences do not involve any of the situations permitting an award of attorney's fees. Therefore, these fees are not recoverable.

■ Appellants' final request in the prayer for relief in the nuisance count, as well as in each of the three other counts, seeks the following:

"[A] mandatory injunction requiring *inter alia*, Defendant to cease and desist its activities as heretofore described and to implement a plan for the safe storage of its radioactive wastes, its radioactive pharmaceuticals and any and all other radioactive supplies."

Private litigants may not obtain state law injunctive relief against nuclear facilities for radiation hazards since public protec-

tion from radiation hazards is exclusively a federal concern. 42 U.S.C. § 2021(k) (1982); *accord Brown v. Kerr-McGee Chemical Corp.*, 767 F.2d 1234, 1240–41 (7th Cir.1985); *Pennsylvania v. General Public Utilities Corp.*, 710 F.2d 117, 120[3, 4] (3d Cir.1983). An injunction ordering Mallinckrodt to stop its activities would, in effect, substitute the judgment of the trial court for that of the Nuclear Regulatory Commission. Quite simply, injunctive relief here would be state regulation. Regulation of the safety aspect of nuclear operations by the state would irreconcilably conflict with federal standards and frustrates federal law. *Accord Silkwood*, 104 S.Ct. at 626[7], 633. *See Mallinckrodt*, 698 S.W.2d at 869[25]. Thus, appellants are not entitled to injunctive relief under any count of the petition.

The second count of appellants' petition sounds in negligence. The essential elements of a claim for negligence are: (1) the existence of a duty on the part of the defendant to protect plaintiff from injury; (2) failure of defendant to perform that duty; and (3) injury to plaintiff resulting from such failure. *Virginia D. v. Madesco Inv. Corp.*, 648 S.W.2d 881, 886[4, 5] (Mo. banc 1983); *St. John Bank & Trust Co. v. City of St. John*, 679 S.W.2d 399, 401[2–4] (Mo.App.1984). Appellants' petition alleges Mallinckrodt owes a duty to appellants in the handling and operation of the plant in regard to the radioactive materials. They allege the breach of this duty by Mallinckrodt's "negligently locating, constructing, designing, operating and maintaining its plant," and also by Mallinckrodt's negligence in its: (1) non-compliance with the Nuclear Regulatory Commission (NRC) requirement that radiation area surveys be recorded with the NRC; (2) improper disposal by the excessive amounts of radioactive materials buried in the soil and discharged into sanitary sewers; (3) inadequate plant design permitting the release of radiation not as low as reasonably achievable; (4) improper or poor training of its personnel who are allowed to handle radioactive materials to appellants' detriment; (5) improper and unreasonable storage of radioactive wastes and materials on its plant site; (6) regular emission of toxic radiation into the air, ground and water around the plant; and (7) numerous violations of Chapter 192 of the Missouri Revised Statutes and 13 Mo.Admin.Code 50–90.040(3). Finally, appellants allege that Mallinckrodt's negligence adversely affected their property values, business interests and profits.

As noted previously, we are to construe the petition liberally and favorably to the appellant. Whether the petition sufficiently alleges a duty is our first inquiry. As a general proposition, a duty of care imposed by the law of negligence arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury. *Lowrey v. Horvath*, 689 S.W.2d 625, 627[4] (Mo. banc 1985). If the allegations show a legal duty of care, an express allegation of such duty is not necessary; however, a mere allegation of the existence of such duty, without a statement of facts from which the duty arises, is insufficient. *See Bonello v. Powell*, 223 S.W. 1075, 1076[3] (Mo. App.1920); *Korach v. Loeffel*, 168 Mo.App. 414, 151 S.W. 790, 791 (1912); 65A C.J.S. Negligence § 186(1) n. 88 (1966). Appellants' petition alleges Mallinckrodt has a duty of care in the handling of radioactive materials. Appellants then set out an extensive list of acts and omissions by Mallinckrodt causing them injury. Construing the allegations most liberally to appellants compels the conclusion that these particular acts as alleged, taken as true, create a foreseeable likelihood of injury, thus satisfying our initial inquiry whether a duty of care exists.

Mallinckrodt contends the petition fails to plead a breach of duty to support a negligence claim because the petition does not allege that the emissions from its plant violate federal emission limits. Without deciding the factual issue whether Mallinckrodt has complied with federal regulations, we know from *Silkwood* that compliance with the federal standards does not

always indicate the absence of negligence. *Silkwood,* 104 S.Ct. at 619. In *Silkwood,* an NRC investigation of Kerr-McGee's activities revealed no breach of relevant federal regulations. *Id.* at 636 n. 7 (Powell, J., dissenting). Moreover, the federal emission standards are only guidelines, not absolute safety levels beyond which no injuries can occur. *Cf.* 10 C.F.R. § 140.-81(b)(1). The regulations additionally provide that licensees should strive to maintain radiation exposures and releases as low as reasonably achievable, 10 C.F.R. § 20.1(c) (1983), reflecting an intent to ensure safety. Mere compliance with statutory requirements by Mallinckrodt does not relieve a party from responsibility for negligence as a matter of law. *Accord Silkwood v. Kerr-McGee Corp.,* 769 F.2d 1451, 1457 (10th Cir.1985). Thus, appellants' petition sufficiently alleges a breach of duty by its allegations that the emissions have been unlawful and unreasonable to withstand at this procedural posture a motion to dismiss for failure to state a claim for relief.

 The final requisite element in a negligence action is the injury. Appellants seek the same relief sought in the nuisance count, i.e., compensatory and punitive damages, an injunction, costs and attorney's fees. Our discussion of damages in the nuisance count is generally dispositive of the damages sought for negligence with the following addendum.

 The negligence count includes the allegation that Mallinckrodt "fraudulently concealed the use, the commencement of its use, the extent of its use of radioactive materials in its operation at said plant site" to appellants' detriment. While appellants' allegation apprises Mallinckrodt of their claim for punitive damages, their entitlement to punitive damages is an evidentiary matter. The evidence must show that the act claimed to have given rise to recovery of punitive damages must be one intentionally done without just cause or excuse. *Stark v. American Bakeries Co.,* 647 S.W.2d 119, 123[6, 7] (Mo. banc 1983); *Asher v. Broadway-Valentine Center, Inc.,*

691 S.W.2d 478, 485 (Mo.App.1985). The wrongful act or conduct must be accompanied by aggravating circumstances, so that the wrongdoer must know that when he committed the act that it is wrongful, or that there must be such recklessness that conscious wrongdoing is necessarily implied. 691 S.W.2d at 485. Absent this proof, the claim is one of ordinary negligence only for which punitive damages are not recoverable. Since the petition alleges that appellants possessed real property, that Mallinckrodt owed a duty to appellants, and that, as a direct and proximate result of the enumerated negligent acts and omissions by Mallinckrodt, appellants sustained injury, appellants have sufficiently stated a claim in negligence.

Appellants' claim for trespass comprises Count III of the petition and states that Mallinckrodt did, and continues to, "commit the invasion of low level radiation from its plant site to the property and the leasehold interest" of the appellants; that these "physical invasions are being done without the consent" of appellants; and that "as a direct and proximate result of the continuing and recurring invasion by Defendant through its plant operations, with knowledge of the resulting harm," appellants have been injured.

In Missouri trespass is described as a direct physical interference with the person or property of another. *Looney v. Hindman,* 649 S.W.2d 207, 212[4] (Mo. banc 1983). Respondents contend this interference must be by tangible objects, characteristic of a dimensional test, and that radioactive emission is not a physical interference. Whether radioactive emissions constitute a physical interference presents an issue not previously addressed in Missouri. Our research has not disclosed any case which treats the invasion of radioactive emissions as a trespass; however, cases involving other similar intrusions are instructive.

In *Martin v. Reynolds Metal Co.,* 221 Or. 86, 342 P.2d 790 (banc 1959) *cert. denied sub nom Reynolds Metals Co. v. Martin,* 362 U.S. 918, 80 S.Ct. 672, 4 L.Ed.2d

739 (1960), plaintiffs brought a trespass action for loss of the use of their land for grazing, claiming defendant's acts caused fluoride compounds in the form of gases and particulates to settle on plaintiffs' land rendering it unfit. The defendants contended their actions at most constituted a nuisance, rather than a trespass to land. Defining trespass as a violation of the possessor's interest in the exclusive possession of his property and nuisance as a violation of his interest in its use and enjoyment, the *Martin* court held the intrusion of fluoride particulates constituted a trespass. 342 P.2d at 794[3].

The *Martin* rationale was echoed in *Borland v. Sanders Lead Co.*, 369 So.2d 523, 527 (Ala.1979), where the court stated:

The confusion surrounding trespass and nuisance is due in a large part to the influence of common law forms of action. The modern action for trespass to land stemmed inexorably from the common law action for trespass which lay when the injury was both direct and substantial. Nuisance, on the other hand, would lie when injuries were indirect and less substantial. [citation omitted]. A fictitious 'dimensional' test arose, which obviated the necessity of determining whether the intrusion was 'direct' and 'substantial.' If the intruding agent could be seen by the naked eye, the intrusion was considered a trespass. If the agent could not be seen, it was considered indirect and less substantial, hence, a nuisance. See, e.g., 1 Harper & James, Torts, § 1.23 (1946) (where the dimensional or the tangible/intangible test is included in an earlier definition of trespass and nuisance).

*Borland* held the presence of lead particulates and sulfoxide deposits created a trespass, concluding:

... If the intrusion interferes with the right to exclusive possession of property, the law of trespass applies. If the intrusion is to the interest in use and enjoyment of property, the law of nuisance applies....

....

....The classic cases of the barking dog, the neighboring bawdy house, noise, smoke, fumes, or obnoxious odors generally invoke the doctrine of the law of nuisance. These intrusions do not typically result in any actionable damage to the *res;* the injury caused by such acts usually results in a dimunition of the use value of the property causally related to the harmful conduct made the basis of the claim....

....

... For example, if the smoke or polluting substance emitting from a defendant's operation causes discomfort and annoyance to the plaintiff in his use and enjoyment of the property, then the plaintiff's remedy is for nuisance; but if, as a result of the defendant's operation, the polluting substance is deposited upon the plaintiff's property, thus interfering with his exclusive possessory interest by causing substantial damage to the res, then the plaintiff may seek his remedy in trespass, though his alternative remedy in nuisance may co-exist. 369 So.2d at 529–30[8, 11–14]. *Cf.*

*Born v. Exxon Corp.*, 388 So.2d 933 (Ala. 1980) (held that light and odors without evidence of any particulate matter deposited on property did not constitute trespass); *but cf. Wilson v. Interlake Steel Co.*, 32 Cal.3d 229, 232–33, 185 Cal.Rptr. 280, 282, 649 P.2d 922, 924 (banc 1982) (held that noise-caused vibrations alone do not support trespass action with dicta indicating intangible intrusions with physical damage may constitute trespass); *Padilla v. Lawrence*, 101 N.M. 556, 685 P.2d 964 (App. 1984) (held that dust on plaintiff's property from a manure plant, absent measurable amount, did not establish a trespass).

■ ■ The problems of proof attendant to a trespass claim for radioactive emissions also remain. The nature of the intrusion, radioactive emissions, makes difficult the determination of the extent of the interference. For the interference to constitute a trespass, appellants must prove the intrusion interfered with their actual possession,

their right of exclusive possession, in order to distinguish between trespass and nuisance, an interference with mere use and enjoyment. Nevertheless, we conclude that radioactive emissions may constitute trespass. The "physical invasion" alleged by appellants, broadly construed, permits the inference that radioactive material has been deposited on appellants' property. Our earlier discussion of damages need not be reiterated. We note that Missouri's common law permits an award of punitive damages in an action for trespass. *Hyre v. Becker*, 18 S.W.2d 137, 140[8] (Mo.App. 1929). We conclude that the petition's allegations as pleaded state a claim in trespass.

Appellants' final count sounds in strict liability for "ultrahazardous" activities. We recently expressed our belief that strict liability as defined by the Restatement (Second) of Torts § 519 (1977) should be adopted and applied to claims based on radiation damage. *See Mallinckrodt*, 698 S.W.2d 867–69. Here, appellants specifically allege that Mallinckrodt's plant site operation with its "resulting unlawful emission of low level radiation has created a high degree of risk of harm to the property, leasehold interest, and business and profits" of appellants and that Mallinckrodt "has been unable ... or has intentionally failed to eliminate the risk" of these emissions. Appellants further allege that the harm significantly outweighs the value of the operation of the plant and that they have suffered injuries. These are necessary elements of a claim for strict liability. Restatement (Second) of Torts §§ 519, 520 (1977); *Mallinckrodt*, 698 S.W.2d at 869. On remand the trial court should develop the appropriate record for its determination whether strict liability, as defined by Restatement (Second) of Torts §§ 519, 520 (1977), should be applied here.

Although we find appellants' claim to be *inartfully* pleaded, its allegations are sufficient to withstand a motion to dismiss. In conclusion, we reverse the dismissal of appellants' petition and remand for determination consistent with this opinion.

Judgment reversed and remanded.

CRIST, P.J., and PUDLOWSKI, J., concur.