**Dallas FLETCHER, et al., Plaintiffs,**

v.

**CONOCO PIPE LINE COMPANY, Defendant.**

**No. 00–3100–CV–S–1.**

United States District Court,
W.D. Missouri,
Southern Division.

Jan. 16, 2001.

Craig R. Heidemann, Douglas, Lynch, Haun & Kirksey, Bolivar, MO, for plaintiff.

Christopher S. Jones, Thompson Coburn, St. Louis, MO, for defendants.

## ORDER

WHIPPLE, District Judge.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Conoco Pipe Line Company ("Defendant") moves the Court to dismiss Counts IV, V, VI, VII, VIII, XIV, XV, XVI, XVIII, XIX, XXI, and XXII of Plaintiff Dallas Fletcher, Katherine Fletcher, Clyde Kent and Dorothy Kent's ("Plaintiffs") Third Amended Complaint. Alternatively, Defendant moves the Court to strike Counts VII, VIII, XIX, and XXII as duplicative pursuant to Federal Rule of Civil Procedure

12(f). Plaintiffs filed Suggestions in Opposition to Defendant's Motion to Dismiss and Defendant filed a Reply, addressing Plaintiffs' arguments. Having carefully considered the parties' arguments, the Court holds that Defendant's 12(b)(6) Motion to Dismiss is GRANTED IN PART and DENIED IN PART. In addition, the Court GRANTS Defendant's Motion to Strike Counts VII, VIII, XIX and XXII pursuant to Federal Rule of Civil Procedure 12(f).

## I. STANDARD OF REVIEW

### A. Motion to Dismiss—Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure governs Defendant's motion to dismiss. The Court will not consider any matters outside the pleadings. To succeed on its motion, Defendant must establish that Plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *May v. Commissioner of Internal Revenue,* 752 F.2d 1301, 1303 (8th Cir.1985). The Court must assume that the allegations in Plaintiffs' Complaint are true, and further, must construe those allegations in their favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *May,* 752 F.2d at 1303. The issue is not whether Plaintiffs will ultimately prevail on their claims, but rather whether they are entitled to offer evidence in support of their claims. *See Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686.

### B. Motion to Strike—Federal Rule of Civil Procedure 12(f)

Rule 12(f) of the Federal Rules of Civil Procedure provides for a motion to strike as follows:

> (f) Motion to Strike. Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion

made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed.R.Civ.P. 12(f). Courts have considered various factors to determine whether claims are redundant. *See Velez v. City of New London,* 903 F.Supp. 286, 291 (D.Conn.1995) (finding that a respondeat superior claim was redundant where the plaintiff had recourse against the defendant for his tort claims via state indemnification statutes); *Sudul v. Computer Outsourcing Servs.,* 868 F.Supp. 59, 61 (S.D.N.Y.1994) (holding that a claim was redundant within the meaning of Rule 12(f) where it essentially duplicated another claim involving the same promisor, the same acts of breach, and the same measure of damages); *Dethmers Mfg. Co., Inc. v. Automatic Equip. Mfg. Co.,* 23 F.Supp.2d 974, 1009 (N.D.Iowa 1998) (concluding that a claim that merely recasts the same elements under the guise of a different theory may be stricken as redundant pursuant to Rule 12(f)); *but see Fink v. DeClassis,* 745 F.Supp. 509, 515 (N.D.Ill. 1990) (stating that a claim of breach of warranty was not redundant of a claim of breach of contract, even though the claims sought essentially the same relief and plaintiff could not obtain duplicative recovery, because the plaintiff was entitled to assert alternative theories and could not be forced to elect one remedy over another in the absence of prejudice to the defendant).

## II. FACTUAL BACKGROUND [1]

Defendant owns and operates underground pipelines that transport oil, crude petroleum, and petroleum products. In the 1930's, Defendant's predecessor in interest, the Ajax Pipeline Company ("Ajax"), obtained what the Plaintiffs char-

---

1. This Factual Background is derived from the allegations in the Plaintiffs' Complaint.

As noted above, in ruling on a motion to dismiss, these allegations are taken as true.

acterize as "pipeline permits" from the former owners of Plaintiffs' properties. The "pipeline permits" granted Ajax a right of way to lay, construct, maintain, operate, alter, repair, remove, change the size of, and replace two lines of pipe for the transportation of oil, crude petroleum and petroleum products. The pipelines at issue begin near Ponca City, Oklahoma, run across, on or near the Plaintiffs' properties, and terminate in Wood River, Illinois.

Defendant's pipelines have cathodic protection as mandated by federal regulations that require protection of all underground steel pipes. *See* 49 C.F.R. § 195.242. Cathodic protection entails passing a low-voltage electrical current along the metal pipeline to protect against corrosion. Plaintiffs assert that the electricity designed to provide cathodic protection has escaped from the pipeline, traveling up to and beyond a distance of thirty feet, and thereby exceeding the scope of the "pipeline permits." The essence of Plaintiffs' claim is that this "stray electricity" is traveling onto and contaminating their land. According to Plaintiffs, representatives of Defendant have made inspections and done testing on the pipeline that should have caused them to conclude that this "stray electricity" was escaping, yet they allegedly failed to prevent the escapage or warn Plaintiffs of possible danger. Plaintiffs assert that the stray voltage contamination has caused them to suffer personal injury, loss of consortium, loss of enjoyment of life, lost profits, and property damage. In particular, Plaintiffs describe how the "stray electricity" has negatively affected livestock, made their electric bill erratic, shortened the life expectancy of motors, appliances, and light bulbs, and accelerated the corrosion of metal structures, such as well casings and fence posts. Plaintiffs seek to impose liability on Defendant for this "stray electricity" pursuant to a number of theories, including, inter alia, nuisance, negligence, strict liability, breach of contract, trespass, loss of consortium, nuisance, inverse condemnation, and ejectment.

## III. DISCUSSION

### A. Counts IV & XIV Strict Liability

■ Defendant argues that Plaintiffs' strict liability claims must fail because neither the operation of the pipeline nor the use of cathodic protection are abnormally dangerous activities that warrant the imposition of strict liability. Plaintiffs disagree and assert that the operation of petroleum pipelines charged with electricity is an abnormally dangerous activity that has the potential to cause widespread death and destruction. Missouri courts have not addressed the issue of whether strict liability applies to the operation of cathodically-protected petroleum pipelines. The Court concludes that the doctrine of strict liability does not apply because neither the operation of a petroleum pipeline nor the use of cathodic protection are abnormally dangerous activities, as a matter of law.

■ The doctrine of strict liability arose from an English case, *Rylands v. Fletcher*, 1 L.R.-Ex. 265 (Ex. Ch. 1866), *aff'd*, 3 L.R.-E & I.App. 330 (H.L.1868). *Rylands* established the premise that if a person brings something on his land which, if it escapes, is likely to do great damage, that person is prima facie liable for all the harm naturally occurring if there is an escape. *See id.* at 279. This theory of strict liability, as it was first articulated in *Rylands*, has been very narrowly applied by Missouri courts. *See Bennett v. Mallinckrodt, Inc.*, 698 S.W.2d 854, 868 (Mo. App.1985) (noting how Missouri courts have historically rejected claims based upon strict liability and required plaintiffs to bring negligence, nuisance or trespass actions instead). Missouri law dictates that a person is strictly liable "when he damages another by a thing or activity unduly dangerous and inappropriate to the place where it is maintained, in the light of the character of that place and its surroundings." *Clay v. Missouri Highway and Transp. Comm'n*, 951 S.W.2d 617, 623 (Mo.App.1997) (citations omitted). While

Missouri courts are generally reluctant to extend the use of strict liability as a theory for relief, activities such as blasting and nuclear operations have been deemed sufficiently dangerous to warrant the imposition of strict liability. *See Donnell v. Vigus Quarries, Inc.*, 526 S.W.2d 314, 316 (Mo.Ct.App.1975) (holding that the theory of strict liability applies to blasting); *Bennett*, 698 S.W.2d at 867 (stating that strict liability should apply to claims based on radiation damage because use of nuclear material is uncommon and poses great danger).

■ The Restatement (Second) of Torts similarly embraces a narrow application of *Rylands*. *See Clay*, 951 S.W.2d at 623 (citing *Bennett*, 698 S.W.2d at 867). According to the Restatement, strict liability dictates that "[o]ne who carries on abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." Restatement (Second) of Torts § 519(1). In ascertaining whether an activity should be deemed "abnormally dangerous," the Restatement directs courts to assess the following factors:

(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

Restatement (Second) of Torts § 520. Courts should consider these factors "as a whole and the weight apportioned to each should be dependent upon the facts in each particular case." Restatement (Second) of Torts § 520.

■ Missouri courts appear to have adopted the Restatement's definition of strict liability—they apply the Restatement's list of factors to determine whether the risks of a perilous activity outweigh the benefits, to the extent that strict liability should apply. *See Bennett*, 698 S.W.2d at 867 (concluding that strict liability, as it is defined by the Restatement, should be adopted by Missouri courts and explaining that "[o]ur Courts have not been deterred in the past from adopting Restatement principles of tort deemed sensible and necessary ... [w]e should not be deterred here"); *Henderson v. United States*, 965 F.2d 1488, 1495 (8th Cir.1992) (applying Missouri law) (accepting the parties' invitation to apply § 520 of the Restatement (Second) of Torts to determine whether the release of water through a dam is an ultrahazardous activity). Thus, to determine whether the operation and cathodic protection of a petroleum pipeline is an abnormally dangerous activity as a matter of law, the Court must analyze Plaintiffs' Complaint with an eye to the Restatement factors. The Court notes that the burden of coming forward with facts sufficient to support a theory of strict liability based on abnormally dangerous activity rests with Plaintiffs. *See Chaveriat v. Williams Pipe Line Co.*, No. 94 C 0750, 1994 WL 583598, at *5 (N.D.Ill. Oct.18, 1994).

The only factor Plaintiffs discuss is factor (b), the likelihood that the harm that results from the activity will be great. Plaintiffs state that the potential for petroleum pipelines charged with electricity to "cause widespread death, destruction or damage to other persons or their property is axiomatic." Plaintiffs fail, however, to offer any support for this assertion; they neither cite to any cases nor reference any news articles. While the Court is willingly to concede that petroleum spills have the potential to cause tremendous property and environmental damage, the Court fails to see the potential for "widespread death and destruction" in the general operation of cathodically-protected petroleum pipelines. Perhaps it is the Court's limited imagination, but no scenarios come to mind. Moreover, a survey of federal case

law fails to uncover any such cataclysmic events.

For many courts, the analysis of whether an activity is abnormally dangerous revolves around factor (c), whether the activity can be made safe through the exercise of reasonable care. *See, e.g., Toledo v. Van Waters & Rogers, Inc.*, 92 F.Supp.2d 44, 56 (D.R.I.2000) (finding that transporting chemicals cannot be considered an ultrahazardous activity "because it can be, and has been, performed safely when the parties involved exercise reasonable care"); *Chaveriat*, 1994 WL 583598, at *5 (stating that the third Restatement factor—the extent to which reasonable care can reduce the risk of harm—merits primary attention). The inquiry should be: "how likely is this type of accident if the actor uses due care?" *See Chaveriat*, 1994 WL 583598, at *5. As one court explained, "if an activity can be performed safely with ordinary care, negligence serves both as an adequate remedy for injury and a sufficient deterrent to carelessness" and the imposition of strict liability is unnecessary. *Id.*

For example, due to uncontrollable factors like wind and terrain, blasting remains an unpredictable and risky activity regardless of what precautions are taken. *See M.W. Worley Constr. Co., Inc., v. Hungerford Inc.*, 215 Va. 377, 210 S.E.2d 161, 163 (1974). Conversely, unlike blasting, the operation and cathodic protection of a petroleum pipeline is a routine and easily regulated activity. As one court observed in the analogous context of underground gasoline storage tanks:

> Maintained, monitored, and used with due care, [they] present virtually no risk of injury from seepage of their contents. They are not abnormally dangerous. Sound tanks, timely replacement of impaired tanks, modern corrosion control techniques, and adequate testing for leakage can eliminate all but a tolerably small amount of risk.

*See Arlington Forest Assocs. v. Exxon Corp.*, 774 F.Supp. 387, 390 (E.D.Va.1991).

The Court also finds that factors (d) and (f) weigh heavily against the application of strict liability. Factor (d) directs courts to consider the extent to which the activity is or is not a matter of common usage. Factor (f) examines the extent to which the value of the activity outweighs the potential danger. Various courts have observed that the transmission of natural gas and petroleum products by pipeline is a common activity in our highly-industrialized society. *See Melso v. Sun Pipe Line Co.*, 394 Pa.Super. 578, 576 A.2d 999, 1003 (1990); *New Meadows Holding Co. by Raugust v. Washington Water Power Co.*, 102 Wash.2d 495, 687 P.2d 212, 216 (1984) (holding that the transmission of natural gas is a matter of common usage and noting that roughly 720,900 miles of distribution pipelines crisscross communities nationwide). There is also general agreement that the transportation of petroleum products is a highly beneficial activity necessary for civilization as we know it. *See Chaveriat*, 1994 WL 583598, at *6.

Finally, the Court finds it significant that Plaintiffs fail to cite a single case applying strict liability to petroleum pipeline operations. On the other hand, the Court notes that several courts have rejected the contention that the operation of a petroleum pipeline is an abnormally dangerous activity. *See Melso*, 576 A.2d at 1004 (citing *Cities Serv. Pipe Line Co. v. United States*, 742 F.2d 626 (Fed.Cir. 1984)). Additionally, in regard to the cathodic protection of the pipeline, the Court observes that Missouri courts have declined to impose strict liability on the activities of electrical generating corporations. *See Mrad v. Missouri Edison Co.*, 649 S.W.2d 936, 941 (Mo.Ct.App.1983).

For the foregoing reasons, the Court finds that, as a matter of law, the operation of a cathodically-protected petroleum pipeline is not an abnormally dangerous activity. The Court anticipates that, if presented with the issue, the Missouri Supreme Court would likely hold that the narrow doctrine of *Rylands* should not be

expanded to impose strict liability on petroleum pipeline operations. Accordingly, the Court holds that Plaintiffs fail to state a claim for strict liability as a matter of law and DISMISSES Counts IV & XIV.

### B. Counts V & XV—Breach of Contract

Defendant argues that Plaintiffs cannot state a breach of contract claim because no contract exists. Defendant asserts that Plaintiffs are erroneously attempting to transform a recorded utility easement into a bilateral contract. Plaintiffs do not address Defendant's arguments in their Reply.

In their Complaint, Plaintiffs plead that Defendant's predecessor in interest was granted a "right of way to lay, construct, maintain, operate ... two lines of pipe for the transportation of oil, crude petroleum" and that this right of way is embodied in a "pipeline permit." Plaintiffs rely on these "pipeline permits" to form the basis for their breach of contract claims. Defendant has attached copies of the documents Plaintiffs refer to as "pipeline permits." The Court may consider these documents without converting Defendant's motion to dismiss into a motion for summary judgment because the so-called "permits" are, in fact, recorded easements and considered part of the public record. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (holding that courts may consider matters of public record outside the pleadings without converting a motion to dismiss to one for summary judgment). Based on the foregoing evidence, the Court finds that the parties did not enter into any contracts concerning Plaintiffs' properties, and that the easements, as a matter of law, cannot support a breach of contract claim. *See Evans v. Colorado Ute Electric Ass'n, Inc.*, 653 P.2d 63, 64 (Colo. App.1982) (holding that where an easement is granted, a grantee who exceeds the easement may be liable in trespass and not for breach of contract). Accordingly, because Plaintiffs fail to state a claim for breach of contract, Counts V and XV are DISMISSED.

### C. Counts VI & XVI—Trespass

Defendant argues that, as a matter of law, the presence of "stray electricity" on Plaintiffs' properties cannot constitute a physical interference sufficient to provide the basis for a trespass claim. Plaintiffs assert that Defendant's "stray electricity" is a tangible phenomenon that invades their lands and causes palpable damage.

In Missouri, trespass is described as a direct physical interference with the property of another. *See Maryland Heights Leasing, Inc. v. Mallinckrodt, Inc.*, 706 S.W.2d 218, 225 (Mo.Ct.App. 1985) (citing *Looney v. Hindman*, 649 S.W.2d 207, 212 (Mo.1983)). Liability for trespass also may arise where entry is made with consent but the scope of the consent is exceeded. *See Griesenauer v. Emsco Corp.*, 399 S.W.2d 147, 151 (Mo.Ct. App.1965). Missouri courts do not appear to have addressed the question of whether electrical emissions can constitute a physical interference with land sufficient to support a trespass claim.

Plaintiffs cite to *Dabb v. NYNEX Corp.*, 262 A.D.2d 1079, 691 N.Y.S.2d 840 (N.Y.App.Div.1999) as support for the proposition that other courts have allowed trespass claims in "stray electricity" cases. The Court agrees with Defendant that Plaintiffs' citation is misleading in that the opinion does not directly address the validity of a trespass claim based on the presence of electricity.

The Court observes that when presented with this issue, the California Supreme Court concluded that homeowners could *not* assert a trespass claim against an electric utility for allegedly emitting electromagnetic radiation onto their property. *See San Diego Gas & Electric Co. v. Superior Court*, 13 Cal.4th 893, 55 Cal.Rptr.2d 724, 920 P.2d 669, 696 (1996). The court reasoned that recovery in trespass actions is generally "predicated upon the deposit

of particulate matter upon the plaintiffs' property or on actual physical damage thereto" and because the electric and magnetic fields from the defendant's power-lines "are wholly intangible phenomena" that cause no physical damage to property, an action in trespass could not lie. *Id.*

In *Maryland Heights Leasing, Inc. v. Mallinckrodt, Inc.,* the Eastern District of Missouri dealt with the analogous issue of whether radioactive emissions can constitute a physical interference with property. 706 S.W.2d at 225. The Court declared that for an "interference to constitute a trespass, appellants must prove the intrusion interfered with their actual possession, their right of exclusive possession, in order to distinguish between trespass and nuisance, an interference with the mere use and enjoyment." *Id.* at 225–226. To further demonstrate the distinction between trespass and nuisance, the court stated:

> The classic cases of the barking dog, the neighboring bawdy house, noise, smoke, fumes, or obnoxious odors generally invoke the doctrine of the law of nuisance. These intrusions do not typically result in any actionable damage to the res; the injury caused by such acts usually results in a diminution of the use value of the property causally related to the harmful conduct made the basis of the claim ... but, if, as a result of the defendant's operations, [a] ... substance is deposited upon the plaintiff's property, thus interfering with his exclusive possessory interest by causing substantial damage to the res, then the plaintiff may seek his remedy in trespass.

*Id.* at 225 (quoting *Borland v. Sanders Lead, Co.,* 369 So.2d 523, 529–30 (Ala. 1979)). Concluding that radioactive emissions may constitute a trespass, the court found that the 'physical invasion' alleged by appellants, broadly construed, permitted the inference that radioactive material had been deposited on appellants' property.

The Court finds that, based upon the rationale in *Maryland Heights Leasing,*

*Inc.,* Plaintiffs have alleged a "physical invasion" sufficient to support a claim of trespass. The present case is distinguishable from *San Diego Gas & Electric Co.* because Plaintiffs have alleged actual physical damage to their property. Plaintiffs claim, inter alia, that the escaping electricity "has a deleterious affect on electric motors and any electric appliance, including light bulbs" and "causes accelerated corrosion of metal structures ... such as well casings and fence posts." The Court concludes that Plaintiffs' allegations, as pleaded, state a claim for trespass. Therefore, Defendant's Motion to Dismiss Counts VI and XVI is DENIED.

### D. Counts XVIII & XXI—Ejectment

Defendant argues that Plaintiffs cannot state a claim for ejectment because Defendant is not "in possession" of Plaintiffs' properties as required under Missouri law. *See* Mo.Rev.Stat. § 524.080. Plaintiffs counter that Defendant is in "constructive possession" of Plaintiffs' properties, because as long as Defendant's "stray electricity" persists it is unsafe for Plaintiffs to reside upon their property.

■■■■ Ejectment is a possessory action. *See Levee Dist. No. 4 of Dunklin County v. Small,* 281 S.W.2d 614, 615 (Mo. Ct.App.1955). Missouri courts recognize ejectment as a means of allowing a landowner to recover possession of property to which he is legally entitled. *See Beelman River Terminals, Inc. v. Mercantile Bank, N.A.,* 880 S.W.2d 903, 905 (Mo.Ct.App. 1994). The party seeking ejectment must establish that "the party sought to be ejected was in possession of the premises at the time of the commencement of the ejectment action." *Macios v. Hensley,* 886 S.W.2d 749, 752 (Mo.Ct.App.1994). In *Macios,* the court held that the defendants were entitled to pursue an ejectment action because the plaintiffs "were, by their actions in positioning [their] dock on defendants' land and docking boats next to it, possessing land that defendants are entitled to possess." *Id.*

To support their argument that as long as Defendant's "stray electricity" invades their land, Defendant should be considered in constructive possession of Plaintiffs' properties, Plaintiffs cite to *Allen v. Welch*, 770 S.W.2d 521, 522 (Mo.Ct.App.1989). Quoting Black's Law Dictionary, the *Allen* court explained that "[a] person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it." *Id.* Another court clarified, however, that:

> 'Possession of land is denoted by the exercise of acts of dominion over it, in making the ordinary use and taking the ordinary profits, of which it is susceptible in its present state—such acts to be so repeated as to show that they are done in the character of owner, and not of an occasional trespasser.'

*Wood v. Phillips*, 50 F.2d 714, 715 (4th Cir.1931) (quoting *Williams v. Buchanan*, 23 N.C. (1 Ired.) 535, 35 Am.Dec. 760 (N.C.1841)). The Court concludes that, as a matter of law, Defendant cannot be considered in constructive possession of Plaintiffs' properties. Even if Plaintiffs' Complaint is broadly construed, there are no set of facts that demonstrate Defendant had the power or intention to exercise control over Plaintiffs' lands. Neither do Plaintiffs allege that Defendant is utilizing their lands as an owner would. Moreover, the parties agree that the title of Plaintiffs' lands is not in dispute. Instead, Plaintiffs seek relief for the damage Defendant's "stray electricity" has allegedly inflicted upon their properties. This is clearly an action based in trespass. The Court directs the parties' attention to Black's Law Dictionary, which explains, in its definition of "ejectment," that: "[e]jectment is an action to restore possession of property to the person entitled to it. Not only must the plaintiff establish a right to possession in himself, but he must also show that the defendant is in wrongful possession. *If the defendant has only trespassed on the land,*

*the action is for trespass (i.e. damages).*" Black's Law Dictionary 712 (7th ed.1999). The Court finds that the monetary damages and injunctive relief prayed for in Plaintiffs' trespass claims are the appropriate remedies. Because the facts, as plead by Plaintiffs, do not support an action for ejectment, Defendant's Motion to Dismiss Counts XVIII & XXI is GRANTED.

## E. Counts XIX & XXII—Permanent Injunction

Defendant argues that because a permanent injunction is a remedy and not a cause of action, Plaintiffs failed to state a claim for which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). In the alternative, Defendant asserts that Counts XIX & XXII should be stricken as redundant because, elsewhere in their Complaint, Plaintiffs request injunctive relief for the majority of their claims.

The Court agrees that there is no "injunctive" cause of action under Missouri or federal law. Instead, Plaintiffs must allege some wrongful conduct on the part of Defendant for which their requested injunction is an appropriate remedy. *See Reuben H. Donnelley Corp. v. Mark I Mkgt. Corp.*, 893 F.Supp. 285, 293–94 (S.D.N.Y.1995). Reading Plaintiffs' Complaint broadly, as we must under Federal Rule of Civil Procedure 8(f), the wrongful conduct on which Plaintiffs primarily base their plea for injunctive relief appears to be Defendant's refusal to desist from allowing "stray electricity" to invade Plaintiffs' properties. Plaintiffs claim that they will suffer irreparable harm if Defendant is allowed to "continue to apply cathodic protection to the pipeline in the area of Plaintiffs' property at such a level as to cause or allow electricity to stray off of the pipeline and out of [Defendant's] easement." The Court concludes that Plaintiffs' "Permanent Injunction" causes of action are in fact reiterations of Plaintiffs' Trespass claims, within which Plaintiffs already request injunctive relief. *See Sudul*, 868 F.Supp. at 61 (holding that a

claim was redundant within the meaning of Rule 12(f) where it essentially duplicated another claim). Accordingly, the Court DISMISSES Plaintiffs' "Permanent Injunction" claims (Counts XIX and XXII) as redundant pursuant to Federal Rule of Civil Procedure 12(f).

### F. Counts VII & VIII—Personal Injury

Defendant contends that Plaintiffs' "Personal Injury" causes of action, like Plaintiffs' "Permanent Injunction" claims, are not distinct causes of action recognized by Missouri courts. Alternatively, Defendant asserts that Plaintiffs' "Personal Injury" counts are merely reiterations of Plaintiffs' other negligence claims. Plaintiffs argue that Counts VII and VIII are capable of standing separate and apart from the other counts in their Complaint, but the Court notes that Plaintiffs fail to explain how this is so.

In Counts VII and VIII, entitled "Personal Injury," Plaintiffs allege that Defendant was "negligent and careless in allowing said electricity to escape from the prescribed pipeline permits" and that "as a direct and proximate result of the negligence and carelessness of Defendant," Plaintiffs suffered injury. These allegations are nearly identical to the allegations pleaded by Plaintiffs in Counts II, III, and XII, entitled "Negligence," "Negligence—Res Ipsa Loquitor," and "Specific Negligence," respectively. In each of these counts, Plaintiffs similarly assert that as a direct and proximate result of the negligent acts and omissions of the Defendant, they have continued to suffer damages. The Court agrees with Defendant that Plaintiffs' "Personal Injury" causes of action (Counts VII and VIII) are duplicative of Plaintiffs' other claims and must be DISMISSED pursuant to Federal Rule of Civil Procedure 12(f). *See Dethmers Mfg. Co., Inc.*, 23 F.Supp.2d at 1009 (concluding that a claim that merely recasts the same elements under the guise of a different theory may be stricken as redundant pursuant to Rule 12(f)).

### IV. CONCLUSION

For the foregoing reasons, the Court hereby:

GRANTS Defendant's Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss as to Plaintiffs' Strict Liability claims (Counts IV & XIV), Breach of Contract claims (Counts V and XV), and Ejectment claims (Counts XVIII and XXI);

GRANTS Defendant's Federal Rule of Civil Procedure 12(f) Motion to Strike Plaintiffs' Personal Injury claims (Counts VII and VIII), and Permanent Injunction claims (Counts XIX and XXII); and

DENIES Defendant's Motion to Dismiss Plaintiffs' Trespass claims (Counts VI and XVI). IT IS SO ORDERED.